MARY BRUNNWORTH, Defendant in Error, *vs.* THE KER-
ENS-DONNEWALD COAL COMPANY, Plaintiff in Error.

*Opinion filed October 28, 1913—Rehearing denied Dec. 3, 1913.*

1. TRIAL—*when motion to direct a verdict is properly refused.*
A verdict in a suit at law should not be directed where there is
competent evidence which fairly tends to sustain the declaration.

2. NEGLIGENCE—*when negligence is question of fact under the
Mining act—proximate cause.* Whether the absence of a cager
at the bottom of a shaft operated by steam and the failure to
maintain a light sufficient to show distinctly the landing and the
surrounding objects in the mine, as required by certain clauses of
section 28 of the Mines and Miners act of 1899, constitute the
proximate cause of an injury is a question of fact, to be deter-
mined under the particular circumstances of each case.

3. SAME—*when violation of a statute is a question of fact.*
Ordinarily, whether an alleged violation of a statute is the proxi-
mate cause of the injury is a question of fact; but where the
evidence is not in conflict and the state of the proof is such that
all reasonable minds must agree that the alleged violation of the
statute had nothing to do with the injury complained of, then the
question of proximate cause becomes one of law.

4. SAME—*common law rule as to negligence of third person.*
At common law the negligence of a third person, inevitable ac-
cident or some inanimate thing contributing to an injury is no
defense to an action therefor, if the negligence charged against
the wrongdoer was an efficient cause and without which the in-
jury could not have occurred.

5. SAME—*contributory negligence is not available as a de-
fense in an action under the Mining act.* In actions based on a
willful violation of the Mines and Miners· act the contributory
negligence of the injured miner has the same relation as the neg-
ligence of a third party at common law, and is no defense where
the contributory negligence relied upon is merely a concurring
cause, which, in connection with the wrongful act of the defend-
ant, produces the injury.

6. MINES—*provision requiring cager to remain at the bottom
of shaft applies to night shift.* That provision of sub-section (*a*)
of section 28 of the Mines and Miners act of 1899 requiring the
cager to remain at the bottom of a shaft operated by steam for
thirty minutes after hoisting of coal ceases for the day, is not in-
tended to protect· members of the day shift alone, but applies to
members of the night shift who enter the mine within such time.

7. STATUTES—*statutes in the nature of police regulations may include persons who are not therein named.* Statutes imposing duties, in the nature of police regulations, upon persons and corporations may be for the purpose of giving to the general public some protection not provided by the common law, or such duties may be imposed for the benefit of a particular class or of any member of the public who may be in a particular place or situation or engaged in a particular line of employment, without expressly naming the class of persons intended to be protected.

8. SAME—*rule when statute is silent as to the class of persons to be protected.* Where a police regulation statute is silent as to the class of persons designed to be protected and who may be damnified by a failure to observe the duties imposed, the application of the statute must be determined from a careful consideration of its various provisions and of the end it was manifestly intended to accomplish.

9. EVIDENCE—*what evidence is necessary to prove violation of welfare statute.* To sustain an action for a breach of a statute which imposes duties for the health, safety and general welfare of the public or some particular class, it is not enough to prove the violation, and a resulting injury, unless the statute is a general police regulation designed to protect the public at large.

10. SAME—*what evidence is necessary to show right of recovery for a violation of statute.* In an action at law for damages, based upon an alleged violation of the Mines and Miners act, which resulted in the death of the plaintiff's husband, the plaintiff must show that at the time of the injury and death the deceased belonged to the class of persons for whose protection and benefit the statute was enacted.

11. APPEALS AND ERRORS—*when question of variance is waived.* A variance between the proof and the declaration cannot be raised for the first time on appeal or writ of error.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding.

CHARLES P. WISE, DAVID E. KEEFE, and WILLIAM E. WHEELER, (GEORGE C. MASTIN, and JOHN J. SHERLOCK, of counsel,) for plaintiff in error.

GEERS & GEERS, for defendant in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Mary Brunnworth, surviving widow of Charles Brunn-worth, brought an action under the Mining act against the Kerens-Donnewald Coal Company to recover damages for the death of her husband. She recovered a judgment in the circuit court of Madison county for $4090. Upon an appeal to the Appellate Court for the Fourth District the judgment was affirmed. The record has been brought to this court for further review as a return to a writ of *certiorari*.

The declaration contained four counts, all of which charged a willful failure to comply with certain provisions of section 28 of the Mines and Miners act of 1899. Two of the counts charged a failure to comply with sub-section (*a*) and the other two alleged a willful failure to comply with sub-section (*b*) of section 28 of the act of 1899. Sub-sections (*a*) and (*b*) are as follows:

"(*a*) At every shaft operated by steam power, the operator must station at the top and at the bottom of such shaft a competent man charged with the duty of attending to signals, preserving order and enforcing the rules governing the carriage of men on cages. Said top man and bottom man shall be at their respective posts of duty at least a half hour before the hoisting of coal begins in the morning, and remain for half an hour after hoisting ceases for the day.

"(*b*) Whenever the hoisting or lowering of men occurs before daylight or after dark, or when the landing at which men take or leave the cage is at all obscured by steam or otherwise, there must always be maintained at such landing a light sufficient to show the landing and surrounding objects distinctly. Likewise, as long as there are men underground in any mine the operator shall maintain a good and sufficient light at the bottom of the shaft thereof so that persons coming to the bottom may clearly discern the cage and objects in the vicinity."

There is but little conflict in the testimony, and the facts which it establishes are in substance as follows: On January 8, 1910, the time when the injury occurred, the plaintiff in error was operating a coal mine at Worden, Madison county, and employed a day and night shift of men. The day shift quit work at 3:30 o'clock in the afternoon and the night shift began work an hour later. All hoisting of coal was done while the day shift was at work, and the hoisting ceased at 3:30 o'clock, when the day shift quit work. On the day of the accident the day shift quit work at the regular time and all of the men came out of the mine immediately thereafter, except the boss driver and the man who feeds the mules, these two remaining in the mine. About 3:50 o'clock P. M., deceased, with three other men who worked on the night shift, (Swain, Schneider and Schmidt,) went down into the mine for the purpose of going to work. W. E. Anderson, plaintiff in error's electrician, had a chain to deliver at the bottom of the shaft and went down in the same cage with the men above named. On the way down deceased stated that he had forgotten his cap and lamp and would have to return to the top for them. It was suggested by someone on the cage that he return with Anderson, who was going up as soon as he disposed of the chain. When they reached the bottom of the shaft they found that the man who was stationed there to attend the signals and govern the loading of the cages as the men on the day shift ascended, had come out of the mine and the lights had been turned off, the only light there being that given by the lamps on the caps of the men, a lantern some twelve or fourteen feet away from the shaft, and a light belonging to the boss driver, who was then in the washroom near the cage, with the door open. The men left the cage and walked a few feet from the shaft. Schmidt and Schneider stopped a short distance from the shaft to fix their lamps. Anderson disposed of the chain, returned to the cage and signaled the engineer

that there was a man to hoist. The engineer answered the signal, and Anderson, after signaling him to go ahead, stepped upon the cage. These signals were made by ringing a bell and could not be given while on the cage. When deceased left the cage he walked a short distance away, laid down his wraps and started back to the cage. It seems that Schmidt and Schneider had heard the signals given by Anderson and the engineer and knew the cage was ready to ascend. As deceased passed them on his return to the cage they called to him to wait, but he did not stop. As he approached the cage Anderson said, "For God's sake, keep off! The cage is belled away!" Brunnworth placed one foot on the cage as it started to rise, reached over and grabbed the car rails on the cage, and in that position was carried up about seven feet, where the cage entered the casing of the shaft. The casing struck him on the back and he was crushed between it and the cage. His body rolled between the casing and cage, and as it did so Anderson grabbed him by the arm and held to him until they reached the top. When he was removed he was dead.

The evidence further shows that plaintiff in error's mine was lighted by electricity, but the electric lights around the bottom of the shaft had been turned off when the cager, or bottom man, left the bottom of the mine and ascended to the top. There were two cages in use in this mine. One was known as the "north cage" and the other as the "south cage." They were operated by a steam hoisting engine located on top. The cages were operated by means of bells, one of which was located at the top and the other at the bottom of the shaft. The bells were operated by air, and were so adjusted that the ringing of one would simultaneously produce the same sound at the other bell. The bell at the bottom was located on the partition between the two shafts and could not be operated by a person on the cage. It was the duty of the cager, or bottom man, to give the signals, and his position was between the cages, near the

bell. It also appears from the testimony that when the bottom man is in his proper position to reach the bell he can stop the cage after it has been belled away by giving a stop signal to the engineer, and that this was often done.

The evidence is clear and uncontradicted that plaintiff in error violated both clauses of section 28 of the Mines act, upon which the declaration is based.

At the close of defendant in error's evidence, and again at the close of all the evidence, plaintiff in error made a motion for a directed verdict, which was overruled by the trial court. Plaintiff in error's principal reliance in this court for a reversal is the alleged error in the court's refusal to direct a verdict in its favor. If there was any competent evidence fairly tending to sustain the declaration there was no error in overruling plaintiff in error's motion and submitting the case to the jury.

Plaintiff in error earnestly contends that the violation of the statute was not the proximate cause of the injury. It is argued, since the evidence shows that the deceased was warned by his associates, and by Anderson, who was on the cage, that the cage had been belled away, that the deceased had all the protection that could have been afforded him had the cager been in his position at the bell, and that, inasmuch as the evidence shows there were two miners' lamps and a lantern in the vicinity of the bottom of the shaft, the absence of a light such as the statute requires could not have been the proximate cause of the accident. It must be borne in mind that the bell could not be operated from the cage. It was for this reason that Anderson had to give the hoisting signal and get upon the cage afterward. If the cager had been at the bell he could easily have seen the deceased approaching the cage, especially if the statute had been complied with in regard to lights. If the cager had known the deceased intended to go up on the cage it would have been his duty to have waited until deceased was on the cage before he belled it away, and it is fair to as-

sume the cager would have discharged his duty. If, on the other hand, he did not know anyone was going up except Anderson and had belled the cage away, he could have stopped it when he saw the deceased in the act of getting upon it. The evidence is that the cage had risen some fifteen or twenty inches when the deceased attempted to get upon it. The witnesses Brown,. Schmidt and Schneider all testify that they had seen the cage stopped by signals from the cager after it had been belled away and started. If it be granted that a cager could have done no more to prevent deceased from getting on the cage than to warn him that it had been belled away, still he could have stopped the cage when he saw, as he necessarily would have seen, the perilous position in which the deceased had placed himself. Again, it is by no means certain that Brunnworth knew the cage had been belled away when he attempted to get upon it. The evidence shows that the deceased's hearing was defective. His associates testify that they had to talk very loud to him and often had to repeat their statements before he would hear them. None of the witnesses who were present are able to say that the deceased heard the warnings that were given him. One of the witnesses testifies that when the deceased was within a few feet of the cage he seemed to stop and hesitate for a second or two and then proceeded toward the cage. But even if it be conceded that the deceased heard the warning, still it was only the warning of persons not in authority and whose orders the deceased was under no obligation to obey. It can hardly be said, simply because the deceased relied on his own judgment and observation rather than that of his fellow-workmen, that he would have disregarded a like order had it proceeded from the cager, whose duty it is, under the law, to maintain order and enforce the rules governing the carriage of men on the cages.

Again, we do not agree with plaintiff in error that the absence of sufficient light at the bottom of the shaft was

not a cause proximately contributing to the accident, and especially when it is considered in connection with the absence of the cager from his position. The evidence shows that it was about five minutes from the time the deceased got off the cage until the accident. As the cage was being lowered he remarked to some of his associates that he had left his cap and lamp on top and would have to go back after them. He was told then that he could return with Anderson, who was only going to the bottom to leave a chain. The evidence of several witnesses who were employed in this mine is to the effect that when one went suddenly from the top down into the mine it required two or three minutes for the eye to become adjusted to the changed conditions, and that one cannot see, immediately upon being lowered into the mine, as well as he can after he has been in the mine for a few minutes. This condition prevails when the miners are suddenly lowered from the light on top to the darkness below. Of course, this trouble is not experienced when there is a good light maintained at the bottom. The deceased, upon getting off the cage at the bottom, immediately began to make preparations to go up with Anderson. He walked a few steps away from the shaft and left the articles he had taken with him and then turned to go back to the cage. The witnesses agree that the whole time the cage remained at the bottom did not exceed five minutes. Had there been a sufficient light to reveal all the objects in the vicinity of the shaft, it is not at all unreasonable to conclude that the deceased could have deposited his belongings and returned to the cage in time to have gotten upon it before it was belled away, but being required to move around in the dark his movements were necessarily slower than they would have been had there been ample light at the bottom. Again, had the light been such as to have shown the position of the cage and all objects in that vicinity, the deceased could have known when the cage started and could not have been misled as

to its exact position at the time he attempted to get upon it. We think, under the evidence, that it was a question of fact for the jury to determine whether the violation of the statute in failing to have a cager at the bottom, and sufficient light, were the proximate causes of the injury.

If contributory negligence were available as a defense to actions under the Mining act there would be a basis in the evidence here for urging that defense, but it is established by numerous decisions of this court that contributory negligence cannot be invoked as a defense against an action based upon the willful violation of the statute. The statute is designed to protect employees in coal mines not only from the inherent dangers of the business, but also to protect them from the result of their own negligent or inconsiderate action. In cases like the one at bar, where there is proof both of a violation of the statute by the operator and contributory negligence on the part of the employee, it is often difficult to determine whether the violation of the statute or negligence of the injured party is the proximate cause of the injury. The rule of the common law is, that if an injury result from the negligent act of another, it is no defense that the negligence of a third person or an inevitable accident or some inanimate thing also contributed to cause the injury, if the negligence charged against the wrongdoer was an efficient cause and without which the injury would not have occurred. (*City of Joliet* v. *Shufeldt,* 144 Ill. 403; *Miller* v. *Kelly Coal Co.* 239 id. 626.) In actions based upon the willful violation of the Mines act for personal injury, the contributory negligence of the injured employee stands in the same relation to the right of recovery as the negligent act of a third party does in a common law action. If, in either case, the negligence relied upon as a defense is only a concurring cause which, in connection with the wrongful act of the defendant, produces the injury, the defense cannot be sustained. This court has often had before it cases under the Mining statute in which

it was contended that the contributory negligence of the injured employee should be held to be the proximate and efficient cause of the injury. Only a few of these cases need be referred to.

*Kellyville Coal Co.* v. *Strine,* 217 Ill. 516, was an action against the coal company for a failure to furnish props to secure the roof and also a failure to examine and mark with a conspicuous mark the dangerous conditions as notice to the men to keep out. The negligence of the miner was there urged as the proximate cause of the injury, and it was held that whether or not the alleged violation of the statute was the proximate cause of the injury was, under the evidence, a question of fact for the jury and that contributory negligence could not be recognized as a defense.

*Davis* v. *Illinois Collieries Co.* 232 Ill. 284, was an action by a shot-firer to recover damages for injuries resulting from an explosion. The statute alleged to have been violated by the company was clause (*g*) of section 20 of the Mines act of 1905, which required the galleries, roadways and entries of the mines to be regularly and thoroughly sprayed, sprinkled or cleaned so as to prevent the air from becoming charged with dust, and to take all possible precautions against the occurrence of explosions which may be occasioned or aggravated by the presence of dust. One of the defenses insisted upon was that the plaintiff had fired the shots in an unskillful manner and by methods that were forbidden by the statute, and that his acts in that regard were the cause of the explosion. In disposing of that defense this court, speaking by Mr. Justice Scott, on page 290 said: "It is also insisted that appellee fired the shots in an unskillful manner and by a method forbidden by the statute, and that his acts were the cause of the explosion. The evidence on his part indicates that, even if this were true, the explosion so caused was merely the explosion of gas resulting from the firing of one of the earlier shots; that the explosion of that gas could not have reached ap-

pellee at the place in the mine where he was injured had the roadway been sprinkled or cleaned, and that the explosion reached him and became harmful to him because it was aggravated and made more destructive by the fact that the air in the roadway was charged with dust. Under these circumstances appellee's negligence, if it existed, was merely contributory and would afford no defense under our statute in reference to mines and miners. The court did not err in refusing to direct a verdict."

*Mertens* v. *Southern Coal Co.* 235 Ill. 540, was based on a failure of the mine examiner to examine the roof of the room in which Mertens was required to work, and to place a conspicuous mark on the walls of said room with chalk, indicating the day and the month of such examination. The evidence in that case showed that the injured party knew that the roof was dangerous, and it was contended that, in view of his knowledge, his failure to properly prop and secure the roof of his room, as required by the statute, was the proximate cause of his injury. This court held, however, that the question of proximate cause was for the jury, and the fact that the miner entered the room and began to work without propping the roof, with knowledge that it was dangerous, was only evidence of contributory negligence on his part, which was held to be no defense.

*Peebles* v. *O'Gara Coal Co.* 239 Ill. 370, was a suit based on the willful failure of the defendant company to furnish the plaintiff with sufficient props. The evidence showed that there was an overhanging piece of slate in the roof of plaintiff's room; that he had attempted to pull it down and finally struck his pick into it with the intention of pulling it down, and that immediately a large piece of slate fell from the roof and inflicted an injury upon him. It was contended in that case that the proximate cause of the injury was the deliberate act of the miner in thrusting his pick into the overhanging coal which caused the roof

to fall, and not the failure of the company to furnish props. In disposing of this contention this court, on page 373, said: "Plaintiff in error does contend, however, that the proof shows that the proximate cause of the injury was not the willful violation of the Mining act by plaintiff in error, but the fact that defendant in error willfully, intentionally and deliberately struck his pick into the coal knowing its condition, and that hence no recovery can be had. It can not be argued from this record that defendant in error struck his pick into this coal with the intention of pulling it down upon himself and breaking his leg. The argument of counsel for plaintiff in error is plainly an attempt to avoid the conclusions necessarily drawn from the former decisions of this court in construing the act here under consideration, as to contributory negligence. Such negligence by the injured person is no defense to an action based upon the mine owner's willful failure to carry out the provisions of said act. (*Kellyville Coal Co.* v. *Strine,* 217 Ill. 516; *Henrietta Coal Co.* v. *Martin,* 221 id. 460; *Eldorado Coal Co.* v. *Swan,* 227 id. 586; *Davis* v. *Illinois Collieries Co.* 232 id. 284; *Mertens* v. *Southern Coal Co.* 235 id. 540; *Olson* v. *Kelly Coal Co.* 236 id. 502.) The question here involved has been so fully and exhaustively discussed in these cases that it can serve no useful purpose to consider it again. This being the rule of law, the court rightly refused instructions 8, 10, 11 and 12."

In *Waschow* v. *Kelly Coal Co.* 245 Ill. 516, the suit was based on a willful violation of the statute which requires the mine operator to examine and mark dangerous conditions. The injured employee was a driver engaged in hauling coal in the mine. The dangerous condition alleged resulted from the track being too close to the rib of coal on one side and permitting gob to accumulate on the other, so as to prevent the driver from alighting from his car in safety. The deceased was thrown or fell from the car and was crushed between the rib and the load of coal and killed.

It was insisted that the dangerous condition complained of was not the proximate cause of the injury. This court, on page 519, disposed of that contention as follows: "Counsel for plaintiff in error further argue that the evidence does not show that the condition of the entry was the proximate cause of deceased's injury; that the proof tended to show that the mule was vicious and that it was running and kicking immediately before deceased was injured; that the viciousness of the mule was the proximate cause of the accident. We think it cannot be seriously urged that the mine was not in an unsafe and dangerous condition, substantially as alleged in the declaration. When an injury proceeds from two causes operating together, the party putting in motion one of them is liable the same as though it was the sole cause. (Bishop on Non-Contract Law, secs. 39, 450.) The negligent act or omission must be one of the essential causes producing the injury but need not be the sole cause nor the last or nearest cause. 'It is sufficient if it concurs with the other cause acting at the same time, which in combination with it causes the injury.' (*Seith* v. *Commonwealth Electric Co.* 241 Ill. 252, and cases cited; *Miller* v. *Kelly Coal Co.* 239 id. 626; *American Express Co.* v. *Risley,* 179 id. 295; Bishop on Non-Contract Law, sec. 455.) Furthermore, what is the proximate cause is ordinarily a question of fact, to be considered by the jury from all the attending circumstances. (*Illinois Central Railroad Co.* v. *Siler,* 229 Ill. 390; *Pullman Palace Car Co.* v. *Laack,* 143 id. 242; Bishop on Non-Contract Law, sec. 455.) There was no eye-witness to the accident, but the manner of death may be proved by circumstantial evidence. (*Economy Light and Power Co.* v. *Sheridan,* 200 Ill. 439; *Commonwealth Electric Co.* v. *Rose,* 214 id. 545.) The character of the injury inflicted upon the deceased, which resulted in his death, indicates that it was caused by his being crushed between the moving car and the protruding rock on the side of the entry, and not by the kick-

ing of the mule. From the facts and circumstances proven it could fairly and reasonably be inferred by the jury that the accident was caused as alleged in the declaration."

The foregoing are only a few of the later cases in which unsuccessful efforts were made to invoke the contributory negligence of the injured employee as a defense by insisting that such negligence was the proximate cause of the injury. The result of all the cases is to establish the following propositions: (1) In actions based on a willful violation of the Mining act the contributory negligence of the injured party is not a defense; (2) whether the alleged violation of the statute is the proximate cause of the injury is ordinarily a question of fact; (3) where the injury is the result of the violation of the statute and the negligence of a third person, inevitable accident or some inanimate thing, the company is liable; (4) where the evidence is not in conflict and the state of proof is such that all reasonable minds must agree that the alleged violation of the statute had nothing to do with the injury complained of, then the question of proximate cause becomes one of law, which may be reviewed by this court. In support of proposition 4 see *Cook* v. *Big Muddy-Carterville Mining Co.* 249 Ill. 41.

Under the rules of law established by the foregoing decisions, and under the evidence found in this record, our conclusion is that this case falls within the rules announced in numerous cases, that whether the violation of the statute alleged was the proximate cause of the injury is a question of fact for the jury, and that, granting that the deceased was guilty of contributory negligence in attempting to get upon the cage at the time and in the manner shown by the proofs, his conduct in so doing was, at most, only contributory negligence, which, as we have seen, cannot be a defense in cases of this kind. There is no additional vitality imparted to such defense by viewing it from another angle and discussing it under the head of proximate cause. There

was no error in submitting the question of proximate cause to the jury.

Plaintiff in error makes the further contention that at the time of the accident it owed no duty to the deceased to maintain a bottom man and a sufficient light at the bottom of the shaft, as required by the statute. Plaintiff in error insists that the provision of the statute requiring a man to be stationed at the bottom of the shaft for a half hour after the hoisting ceased, applies in this case only to the day shift, and deceased not being employed on that shift and having descended into the mine more than a half hour before his shift began work, it was not required to keep a man stationed at the bottom of the shaft after the men belonging to that shift came out of the mine. An instruction embodying that theory of the law was offered by plaintiff in error but was refused by the court. Plaintiff in error earnestly insists that the refusal of the court to give this instruction is reversible error.

Defendant in error having rested her right to recover upon the violation of the statute, it is necessary that the proof should show that at the time of the injury and death of her intestate he belonged to the class of persons for whose protection and benefit the statute was enacted. Statutes imposing duties upon persons and corporations in the nature of police regulations may be for the purpose of giving to the general public some protection not provided by the common law, or such duties may be imposed for the benefit of a particular class or of any member of the public who may be in a particular place or situation or engaged in a particular line of employment. Statutes which impose duties for the health, safety and general welfare of the public or some particular class may be intended to accomplish any one or more of these purposes, though none of them are expressly stated. When the statute is silent as to the class of persons designed to be protected and who may be damnified by a failure to observe the duties imposed, the

application of the statute to one invoking its protection must be determined from a careful consideration of the various provisions of the statute and of the end it was manifestly intended to accomplish. · (Cooley on Torts,— 3d ed.—1395.) It is not enough, to sustain an action for a breach of a statutory duty, to prove the violation and a resulting injury, unless the statute is a general police regulation designed to protect the public at large. To illustrate: We have a statute requiring a railroad company to give certain warnings or signals upon approaching a public highway which crosses its tracks, but this duty is imposed for the protection of persons and their property who may be crossing the railroad upon the highway, and does not apply to a trespasser who is walking longitudinally along the railroad. (*Chicago, Rock Island and Pacific Railway Co.* v. *Eininger,* 114 Ill. 79; *Roden* v. *Chicago and Grand Trunk Railway Co.* 133 id. 72.) There are various other provisions of our statutes relating to the operation and movement of trains and relating to certain callings, such as the practice of medicine and the vending of drugs and poisons, which are manifestly designed to protect the health and safety of the public and promote the general welfare, and, in order to better accomplish the legislative purpose, the violation of the duties imposed by these and other like statutes is generally held to be actionable negligence as against any person in a position to invoke the protection of the statute.

Section 29 of article 4 of the constitution of 1870 declares that "it shall be the duty of the General Assembly to pass such laws as may be necessary for the protection of operative miners, by providing for ventilation, when the same may be required, and the construction of escapement shafts, or such other appliances as may secure safety in all coal mines, and to provide for the enforcement of said laws by such penalties and punishments as may be deemed proper." In compliance with its constitutional duty the legislature passed the act upon which this suit is based,

which is entitled "An act to revise the law in relation to coal mines and subjects relating thereto, and providing for the health and safety of persons employed therein." Subsection 28a imposed the duty upon plaintiff in error to station at the bottom of the shaft "a competent man charged with the duty of attending to signals, preserving order and enforcing the rules governing the carriage of men on cages," and required the bottom man to be at his post of duty half an hour before the hoisting of coal begins in the morning and to remain for half an hour after the hoisting ceases for the day. The evidence is undisputed that the bottom man had left his station at the bottom of the shaft before the expiration of the half hour after the hoisting had ceased for the day. At the time plaintiff's intestate reached the bottom of the shaft the law required the bottom man to be at his post of duty "preserving order and enforcing the rules governing the carriage of men on cages." Plaintiff's intestate was not a trespasser on plaintiff in error's premises. At the time of his injury he was a member of that class of persons for whose health and safety the Mining act was passed. He was an employee of plaintiff in error at the time he lost his life. The mere fact that he descended the shaft before he was required to do so did not render him a trespasser or deprive him of the protection of the statute.

*Bartlett Coal and Mining Co.* v. *Roach,* 68 Ill. 174, was a suit brought to recover for the death of an employee, which was caused by a willful failure of the mining company to securely fence the top of the shaft with vertical or flat gates properly covering and protecting the area of the shaft, as required by section 8 of the Mining act of 1872. An employee, while working about its top, fell down the shaft and was killed. One of the defenses interposed was, that the requirement of the statute was intended to protect third persons and domestic animals from falling into the open shaft. This court rejected this view and held that the

act was intended to protect employees, and said that the title itself expresses the beneficent purpose the legislature had in view in the passage of the law, namely, to provide "for the health and safety of persons employed in coal mines."

To hold that the bottom man on the day shift owed no duty to any employee of the plaintiff in error except those employed on the day shift would be to place a construction on the statute so narrow and restricted as to defeat in a great measure the purposes sought to be accomplished by this legislation. There was no error in refusing the instruction complained of.

It is further argued that there is a variance between the proof and the allegations of the declaration. No assignment of error covers this point and we find nothing in the record indicating that the question was raised on the trial. To preserve such a question for review it must be presented in the trial court and a ruling obtained thereon. *Parmelee Co.* v. *Wheelock*, 224 Ill. 194.

It is further insisted by plaintiff in error that two of the instructions given on behalf of defendant in error were misleading, in that they failed to tell the jury what the pecuniary loss to the defendant in error rested upon, and did not limit it to the allegations of the declaration. The instructions in question on this point were substantially the same as instructions which have heretofore been sustained by this court. *Bonato* v. *Peabody Coal Co.* 248 Ill. 422, and cases cited.

The objection to defendant in error's instruction No. 3 has already been disposed of by our holding that under the sections of the mining statute in question plaintiff in error owed a duty to the deceased even though he entered the mine before 4:00 P. M.

We have examined the questions raised by plaintiff in error as to the improper admission of evidence on behalf of defendant in error and the undue restriction of the cross-

examination of some of her witnesses, and are of the opinion that the court committed no reversible error on these points.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*