The Girard Coal Company v. Charles H. Wiggins.

Same v. John C. Cloyd.

Same v. James Sinnott.

Same v. James McKnight.

1. MINES AND MINING—*Duty of the Owners of Mines.*—It is the duty of the owners and operators of mines to provide "safe means," etc., for carrying persons in and out of the mines.

2. MINES AND MINING—*Willful Violation of the Mining Law.*—Sec. 14 of Ch. 93, entitled "Miners," declares the liability when the owner or operator of a mine "willfully" fails to provide such "safe means" or machinery. A willful violation of the statute is a violation of its provisions knowingly and deliberately.

3. WILLFUL NEGLIGENCE—*What Constitutes.*—To constitute willful negligence, the act done or omitted must have been intended. Negligence so gross in character as to amount to recklessness, and to indicate a willingness to subject others to a known and avoidable risk, will support a charge of willful or intentional wrong.

4. CARE—*Failure to Use Ordinary.*—The failure to use ordinary care does not necessarily include the elements of willfulness. A charge of willfulness is not maintained by proof of mere negligence.

5. MINES AND MINING—*Test of the Owner's Liability.*—The test demanded by law as to the machinery, is that it shall be safe, but the test of the liability of the mine owner is that he willfully failed to make or keep it safe.

6. MINES AND MINING—*Duty of Owners in Providing Machinery.*—The law does not require mine owners to use any particular make of machinery, nor does it require them to use the very best and most modern kinds; it only requires that the machinery shall be reasonably safe and suitable for the purposes for which it is used.

7. INJURIES—*Defense When the Act is Willful.*—When recovery is sought for injuries resulting from mere inadvertence or negligence, pure and simple, the defendant may often defeat liability upon the ground that the plaintiff knew of the dangers to which he might be exposed and voluntarily chose to take the chances of encountering them; or upon the other ground, that the plaintiff was injured by the negligence of a fellow-servant; but neither of these defenses is available when the injury is the result of the willful act, or willful failure of the defendant to act.

8. EXPERT TESTIMONY—*What is Not.*—A witness, though not learned in the science of medicine, may express an opinion as to whether another is insane, sober, ill, or suffering with pain.

9. EVIDENCE—*Hypothetical Questions.*—The proper purpose of a hypothetical question is to obtain the opinion of one entitled by superior learning and experience to speak and express an opinion upon a state of facts which, for the purpose of his consideration, are to be received by him as true.

10. INJURIES—*The Result of Incompetent Employes.*—If a master, in employing an engineer, had knowledge at the time of his employment, or at any time before an injury occurs, that he was incompetent or inexperienced, and has willfully employed or kept him in his employment after obtaining such knowledge, the company will be liable.

**Memorandum.**—Action for personal injuries. In the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Declaration in case; plea, not guilty; trial by jury; verdict and judgment for plaintiff; appeal by defendants. Heard in this court at the May term, 1893, and affirmed. Opinion filed October 28, 1893.

The opinion states the case.

APPELLANT'S BRIEF, CONNOLLY & MATHER, ATTORNEYS.

The master does not have to furnish absolutely safe machinery, nor the best or most improved kind. Weber Waggon Co. v. Peter Kehl, 139 Ill. 646.

APPELLEE'S BRIEF, PATTON & HAMILTON, ORENDORFF & PATTON AND STALEY & GUARD, ATTORNEYS.

The question of willfulness must be determined by the jury from the facts and circumstances of each particular case. It is as difficult of definition as negligence itself. It is such a gross want of care and regard for the rights of others as to justify the presumption of willfulness or wantonness. When the statute requires the owners or operators of mines "to provide safe means of hoisting and lowering persons" in their shafts, and they knowingly fail in any particular to so provide, or when the defects are such that, by the exercise of reasonable care, they might have known of them, they are guilty of willfulness, and one injured because of such failure may recover, and the doctrines of contributory negligence and the negligence of fellow-servants have no application. L. S. & M. S. Ry. Co.

v. Bodemer, 139 Ill. 596; Catlett v. Young, 38 Ill. App. 198 Niantic Coal & Mining Co. v. Leonard, 126 Ill. 216.

MR. PRESIDING JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

The Girard Coal Company, the appellant in each of the foregoing cases, was operating a coal mine at Chatham, Illinois, by means of a shaft, into which it lowered its employes in iron cages, which were hoisted and lowered by a steam engine and other appliances provided by it for the purpose. On the 16th day of January, 1892, one of its cages, in which the appellees in the cases named, all being employes of the appellant company, were being lowered into the mine, fell with great force and violence to the bottom of the shaft. All of the appellees were injured by the fall, and each brought an action on the case in the Sangamon Circuit Court, to recover damages by them thus respectively sustained.

The cases were tried before the court and a jury, the result in each instance being a judgment against the appellant company. From these judgments the company brought each of the cases into this court by appeal. The facts of each case as to the manner and cause of the fall of the cage are the same, and counsel very properly, by agreement, presented all the cases in one brief, made applicable to them all. The ground of recovery in each case is, that the appellant company willfully violated Sec. 6 of Chap. 93 of R. S., as amended by the act of the General Assembly in force July 1, 1887, by providing for the use of the mine in hoisting and lowering the cages, an unsafe and unsuitable steam engine, and defective, worn and insufficient appliances used in connection therewith; and that it violated Sec. 7 of the same chapter of the statutes by placing such steam engine and appliances in charge of an incompetent, inexperienced and intemperate engineer; and that the fall of the cage and the consequent injury to the appellees was the result of such willful violations and omissions of statutory duty. The plea of the appellant company was "not guilty." It is formally

assigned for errors that the damages allowed in each case were excessive, but the point was not mentioned in the oral argument, nor referred to in the printed briefs, and is therefore deemed waived or abandoned. We, moreover, do not think it well taken in any one of the cases.

Exceptions were taken to certain rulings of the court upon questions of the admissibility of evidence, in the course of the different trials, to which we will refer in the further course of this opinion, though no error demanding a reversal thus occurred. The chief contention of the appellant company is, that the verdict in each case is against the weight of the evidence. We were favored by counsel with an exhaustive oral discussion of the evidence and points involved in the cases, which we followed with careful attention, and we have attentively read, and fully considered the printed briefs and argument of counsel, which are largely devoted to questions of the sufficiency of the testimony.

After a thorough examination of the somewhat voluminous testimony, and full consideration of the argument of counsel as to the force and efficacy thereof, we have arrived at the conclusion that sufficient evidence was submitted in each case to warrant the findings that the engine and other parts of the machinery brought into requisition in hoisting and lowering the cage, were so defective as to be unsafe, and that the engineer in charge was incompetent and inexperienced, and further, that the appellant company, through its chief officials, was sufficiently advised of the unsafe condition of the machinery, and of the fact that the engineer was not competent and had not had sufficient experience as an engineer to justify his retention in that position, and that having such knowledge, the appellant company deliberately continued to use the engine and machinery, and to keep the engineer in charge and control of it. When we find it necessary to set aside the verdict of a jury, and reverse the action of a court in approving it, because in our view the evidence is insufficient to support the verdict and judgment, we feel that in proper consideration of the rights and interests of the parties whose litigation we

Girard Coal Co. v. Wiggins.

reopen, as well as due regard for the opinion of the trial court and jury, demands that we enter into a discussion of the testimony appearing in the record, and point out wherein it fails to justify the rendition of the judgment. When, however, we find the testimony sufficient to warrant and support the verdict and judgment, no such reasons require that we lengthen the opinion by a recapitulation and an analysis of the testimony, or that we should state at length our reasoning as to the weight and value of the facts and circumstances proven, or our conclusion in detail upon the different controverted questions of fact; nor can we see that any benefit would accrue to the litigants or to the profession, however elaborate in that respect the opinion might be.

We content ourselves, therefore, with the statement that we find sufficient evidence in the record to uphold the several judgments, and that it can not be said that the findings of the jury were in any of the cases manifestly wrong. Unless prejudicial error is found in the rulings of the court as to the admissibility of evidence, or in the instructions given to the jury, the judgments should not be disturbed.

It is objected that certain instructions given in each case in effect advise the jury that the engine and machinery, in order to exonerate the appellant company from liability, must be safe, while the law, as appellant's counsel insist, only requires that the engine and appliances shall be reasonably safe. The court instructed the jury upon behalf of the appellant that the statute only required that the appellants should provide reasonably safe engine and machinery, and the instructions given for the appellees, which are supposed to announce a contrary rule, will be found to do so only because of the incorporation of the words of the statute into the instructions.

The language of the statute is that " the owner or operator of every coal mine operated by shaft shall provide safe means of hoisting or lowering persons in a cage, etc. (Sec. 6, Chap. 93, R. S., entitled Mines.) We are not prepared to say that this statute should be construed to require only reasonably safe machinery. The operation of transporting persons to

and from the bottom of mining shafts in cages moved and
controlled by steam power is attended with great danger.
This statute was enacted in view of such danger, and it
should have such construction as will effectuate the pur-
poses designed to be accomplished, which was the safety of
persons thus carried in the cages. The dangers to which
such persons are exposed are even greater than that of per-
sons who are being transported by railroad companies in
coaches and cars propelled upon tracks upon the surface of
the earth by steam engines, for the cages are subject to
perils arising from the action of the laws of gravitation, from
which railroad cars and coaches are in comparison measur-
ably free. Yet the law demands of railroad companies the
highest degree of care and skill, to the end that their ma-
chinery connected with the propulsion and control of pas-
senger coaches shall be safe. If we were left to formulate
a rule we should regard the duties and responsibilities of
railroad companies as carriers of passengers and that of mine
owners as carriers of persons in cages into and out of their
mines as so far analogous, that no distinction favorable to
the mine owner could be drawn between the degree of care,
diligence and skill that ought to be required. But we think
the statute itself furnishes the rule that it is to govern as to
mine owners. While the sections we have mentioned re-
quire that the owners and operators of the mine shall provide
"safe means," etc., for carrying persons into and out of the
mines, the 14th section of the same act only declares liabil-
ity when the owner or operator of the mine "willfully"
fails to provide such "safe means" or machinery. A willful
violation of the statute has been defined to be a violation of
its provision knowingly and deliberately (Cattlet v. Young;
143 Ill. 74), and in the Peoria Bridge Co. v. Loomis, 20 Ill. 235,
it was ruled that "to constitute willful negligence the act done
or omitted must have been intended." Negligence so gross in
character as to amount to recklessness and to indicate a
willingness to subject others to a known and avoidable risk,
may support a charge of willful or intentional wrong, but
the failure to use ordinary care does not necessarily include

the elements of willfulness. A charge of willfulness is not maintained by proof of mere negligence. C., B. & Q. R. R. Co. v. Dickson, 88 Ill. 431; 18 Amer. & Eng. R. R. Cases, 192; see Shearman & Redfield on Negligence, Sec. 7. Therefore we think the test demanded by the law as to the machinery is that it shall be safe, but that the test of the liability of the mine owner is, that he willfully failed to make or keep it safe. The instructions do not depart from the words of the statute and are not in this respect complained of, objectionable.

In the Wiggins case, and in fact in each of the cases, the court, in behalf of the plaintiff, gave the following instructions:

"The court instructs the jury that a person or corporation operating a coal mine is bound to avail himself or itself of all new inventions and improvements known to him or it which will contribute materially to the safety of employes, whenever the utility of such improvements has been thoroughly tested and demonstrated and their adoption is within the power of such person or corporation, so as to be reasonably practicable."

And in behalf of the defendant in each case the following instruction:

"The law does not require mine owners to use any particular make of engine or machinery, nor does it require them to use the very best and most modern engine or machinery; it only requires that the engine and machinery shall be reasonably safe and suitable for the purpose for which it is used."

The appellant company objects to the first of these instructions. However the rule may be, it can not be contended that the instruction could have been so prejudicial to the appellant as to demand a reversal. It was not proven or attempted to be proven in either of the cases that any such "new inventions or improvements" had been made and was know to the appellant company, nor did the right of recovery in either case hinge at all upon the existence of such "new inventions" or more improved machinery. The instruction might well have been refused upon the ground

that there was no evidence to base it upon, but no harm came from it we feel assured.

In the Wiggins case, further complaint is made that the court erred in giving the first, third and fourth instructions in behalf of the appellee. As to the first, the complaint is that the jury are not told that before the plaintiff could recover, it was necessary that it be proven not only that the engineer was incompetent or inexperienced, or the machinery not safe, but further, that the injury complained of must have resulted therefrom. The instruction purports only to advise the jury as to what would constitute a willful violation of the statute and it was not therefore necessary that it should direct them as to all the elements of a right of recovery. The third instruction directs the jury as to the duty of the appellant company in relation to its engineer, and the objection made against it is that it does not sufficiently state that the company is liable only for willful delinquencies in that respect. As to this the instruction in effect is that if the engineer was incompetent or inexperienced, and the appellant company had knowledge thereof, or could have had such knowledge " by the exercise of reasonable diligence," then the retention of the engineer should be deemed a willful omission of duty. There is force in the objection.

We do not understand, as we have here before stated, that the mere failure to exercise ordinary care and diligence is sufficient to create liability under and by force of the statute. The delinquency or violation must have been willful— not merely an " inadvertence " or failure to use ordinary care. Hence we can not approve the instructions, but yet do not think the cases should be reversed because of the error therein. First, because we find it quite satisfactorily proven by a preponderance of the evidence that the appellant company had knowledge of the defects in the machinery and of the incompetency of the engineer and with such knowledge, deliberately continued to use the machinery and to commit it to the control of the engineer. Hence the verdict was right upon the facts proven and ought not to be

disturbed. Second, because the appellant company of its own accord submitted the case to the jury, upon the same theory as to the degree of care and diligence required of it as that declared in the instruction now objected to. Con. Coal Co. v. Haenni, 146 Ill. 614. But one instruction asked of the trial court by the appellant company in the Wiggins case was refused, and it related to alleged improper remarks of counsel for the appellee in the presence of the jury.

It is not complained that any instruction presented by the appellant in that case was in any manner modified. It is then to be assumed that the instructions given in appellant's behalf stated the law as the appellant desired it should be understood by the jury. The appellant asked for and obtained this instruction.

The first count charges that the defendant in violation of the statute willfully employed "Edward Cahill, who was then and there an incompetent, inexperienced and intemperate engineer." To entitle the plaintiff to recover under this count, he must prove by a preponderance of the evidence that the engineer was either inexperienced or incompetent at that kind of work, or that he was intemperate, and that the defendant knew that when it employed him, or ascertained it after he was employed and before the accident, or that the defendant, by the use of reasonable care, could have discovered the inexperience, incompetency or intemperance of such engineer before the accident.

At least two other instructions, the same in effect as the one quoted, were asked for by the appellant company and given by the court, and none to the contrary. The statute as thus declared to the jury by the appellant's instructions when considered as a series, only required the appellant company to use ordinary care to provide reasonably safe machinery, and a like degree of care to secure a competent and experienced and sober engineer; but made it liable for omissions and violations of the statutory provisions in these respects occurring through a lack of reasonable care and diligence, though not willful.

While we do not understand the construction thus given

the statute to be correct in either respect; yet such was the construction given at the request of the appellant company. Its counsel no doubt regarded the defense the stronger under such view of the law and ought not to be allowed now to complain, unless the court can see that the verdict was wrong upon the merits of the controversy.

It is urged that the judgment in the Wiggins case should be reversed because of alleged erroneous ruling of the court upon questions of the admissibility of evidence. Edward Cahill, the engineer, a witness for the appellee Wiggins, upon cross-examination, when asked if the co-operative company (of which it was alleged Wiggins was a member) had recommended him as a competent and experienced engineer to Mr. Young, who was in charge of appellant's mine, replied that "Mr. Young told him such recommendation had been made." This was withdrawn by the court on motion of the plaintiff below, and such action of the court is assigned for error. The ruling was correct. No reason is known and none is suggested, why the appellant should be permitted to give in evidence the declarations of one of its officers.

Further, Mr. Young, as a witness for the appellant company, was allowed to testify fully as to such alleged recommendations of Cahill as an engineer, by the members and officials of the co-operative company, so no possible wrong could have occurred.

William Bates was allowed to give in evidence his opinion as to the effect of certain alleged defects in the engine and machinery upon the power of the engineer to control the cages, and as to whether or not the use of an "indicator" in connection with the hoisting machinery contributed to the safety of the operation of lowering the cages. Error in this respect is alleged to have occurred. The evidence showed that Bates was, and for four years had been engaged in the business of erecting hoisting machinery in coal mines; that he had been superintendent and assistant superintendent of the mines of the appellant company at Girard, and mine manager of the Chatham Coal Company's mines, and that he had been constantly engaged as hoisting engineer

for a period of five years. He was, we think, competent to express an opinion as an expert and was properly permitted to do so by the court.

The court refused to allow Mr. Young, appellant's mine manager, to testify as to orders and instructions given by him concerning the iron covers of the cage.

The second count of appellee's declaration charged that the appellant company violated the statute by failing to provide " covers of boiler iron " for its cages, but the appellee closed his case without submitting any proof relative to such charge or in any manner relying upon it. It was therefore entirely unnecessary to consume the time of the court in hearing evidence as to the covers of the cage. At the request of the appellant the court instructed the jury that " there is no evidence tending to show that the injury occurred because the cages were not so covered, and that as to such charge the plaintiff could not recover, and that you need not spend any time considering the question as to how the cage was covered."

Appellant's complaint in this respect, is entirely groundless. No other objections are presented in the Wiggins case.

We find no substantial error in the instructions or ruling of the court in that case, and believing that the evidence amply supports the verdict, the judgment is affirmed.

In the Cloyd case the jury was instructed, at the request of each of the parties, practically to the same effect as was the jury in the Wiggins case. Therefore what has heretofore been said as to the instruction in the latter case is fully applicable to the objections urged against the instructions given in the Cloyd case.

Mr. Matthews, as witness for the appellant in the Cloyd case, when testifying as to the competency of the engineer and the manner in which he controlled and managed the cages, mentioned an incident or occurrence which he would not say occurred while Cahill was acting as engineer. The court, on motion of the appellee, Cloyd, excluded the testimony as to such incident or occurrence. This is assigned for error. We are not able to perceive the applicability or

force of the evidence. Counsel did not refer to it in the oral argument and in the printed brief and argument only say "we thought it competent and believe it was error in the court to exclude it." Perceiving no reason in favor of its admission and none being suggested, we can only overrule the objection.

It is complained that the court refused to allow J. H. Darneille, a witness for the appellant company in the Cloyd case to answer whether Cahill (the engineer) said to him "that he could run that engine twenty years and not have an accident." The statements of Cahill in no way bound Cloyd, and were inadmissible in evidence, except for the purpose of impeaching Cahill. No foundation for such impeachment had been laid and therefore the statement of Cahill was properly excluded.

So we find no error in the Cloyd case demanding the reversal of the judgment. It is therefore affirmed.

In the Sinnott case the instructions asked and given in behalf of each of the parties with but one exception announce as the correct rule that the statute requires that mine owners shall provide "safe means of hoisting and lowering persons in cages," and shall place the engine and machinery used for that purpose in charge of a competent and experienced engineer, and be liable for willful violations of, or willful failures to observe such requirements. The rule thus announced accords with our views as expressed hereinbefore when passing upon instructions in the Wiggins case.

The exceptional instruction is one given for the appellant, which may be construed to require no higher degree of care and diligence in a mine owner in providing machinery than merely ordinary care, but of this the appellant company does not complain, because it is in its favor, and ought not to be allowed to complain, because it asked for and obtained the instruction as it was given. The court modified three instructions asked by the appellant in this, the Sinnott case. The first as modified and given was as follows:

"No verdict can be found against the defendant in this

case unless it is proven by a preponderance of the evidence that the defendant *wilfully violated* the statutes by employing an inexperienced or incompetent engineer, and that the injury occurred because of that, or that the defendant *wilfully* used insufficient machinery, and that the injury occurred because of such insufficient machinery."

The instruction as presented to the court instead of using the word "wilfully," italicized in the instruction above quoted, attempted to employ other words supposed to be equivalent in meaning, amounting to a definition of the word. This the court struck out and instead inserted the word "wilfully." The definition of the word wilful was not and could hardly have been properly interpolated in the instruction. Therefore the court adopted the statutory word.

The modification of the second of these instructions did not serve at all to change in any degree the legal rule sought to be announced, but only to restrict its application to the issue made under the charge in the declaration, that the appellant company wilfully employed an incompetent and inexperienced engineer. The modification added to the clearness and force of the instruction and detracted nothing from its proper effect.

The third modified instruction when presented to the court, announced, to entitle the plaintiff to recover upon the ground that the engineer was incompetent or inexperienced, it must be proven that such engineer was so incompetent or inexperienced and that the appellant had knowledge thereof, and with such knowledge wilfully employed him. The court so modified the instruction that it allowed recovery if the appellant knew when it employed him or *at any time prior to the injury to the appellee* that the engineer was incompetent or inexperienced, and wilfully employed or kept him in its employment after obtaining such knowledge.

The propriety and correctness of the modification can not, it seems to us, be doubted.

The court refused two instructions asked by the appellant company in the Sinnott case. The first of these instructed the jury that Sinnott could not recover if he

knew before the injury, or by reasonable diligence might have known, that the engineer was incompetent or inexperienced, or the machinery or engine defective, and the second declared that Sinnott could not recover if he and the engineer were fellow-servants. Neither of these instructions ought to have been given. When recovery is sought for injuries resulting from mere inadvertence or neglect, pure and simple, the defendant may often defeat liability upon the ground that the plaintiff knew of the dangers to which he might be exposed and voluntarily chose to take the chances of encountering them, or upon the other ground that the plaintiff was injured by the negligence of a fellow-servant; but neither of these defenses are available when the injury was the result of the willful act, or willful failure to act, of the defendant.

We have examined and considered the contention of the appellant that errors occurred in the ruling of the court upon questions of the admissibility of evidence in the Sinnott case, but find no errors in that respect requiring a reversal of the judgment.

Finding no such error in the Sinnott case as to demand a reversal and that the evidence is sufficient to warrant the verdict the judgment rendered upon such verdict is affirmed.

In the McKnight case it is urged that the court erred in admitting certain evidence in behalf of the appellee. One specific objection is that Henderson, a witness for McKnight, was allowed to testify that McKnight " seemed to be in pain when attempting to plow; that he acted and looked as though he was in pain." We understand that any witness, though not learned in the science of medicine, may express an opinion as to whether another is insane, sober, ill or suffering with pain.

Again it is insisted that the court erred in allowing Dr. J. L. Taylor to express an opinion as to the character of McKnight's injuries, whether likely to be permanent or not, in answer to a hypothetical question which was based to some extent upon statements assumed to have been made by

McKnight to his physician, while under medical treatment for his injuries, and which statements the witness was, in considering the hypothetical question, directed to consider as being true. The objection seems to be that it was error to allow the physician to express an opinion based upon the assumption that the statements of the plaintiff made to his physician as to the seat and character of his pains were true. There can be no force in this. The proper purpose of a hypothetical question is to obtain the opinion of one entitled by superior learning and experience to speak and express an opinion upon a state of facts which, for the purpose of his consideration, are to be received by him as true.

The complaints of a patient and his statements made to his physician as to his pains and symptoms may, under certain circumstances, be properly proven, and it is not complained that in this case evidence of that character which was given was improperly received. A hypothetical question might, therefore, be properly submitted upon the assumption that the hypothetical facts were true.

The objections to the instructions in the McKnight case do not present for consideration any point not considered in the other cases. It is therefore unnecessary to refer to them.

We find no errors in the case of sufficient gravity to require us to disturb the verdict and judgment.

The judgment in the McKnight case, as in each of the other cases, must therefore be affirmed.