Antonio Frenci, Appellee, v. Tazewell Coal Company, Appellant.

Gen. No. 5383.

1. MINES AND MINERS—*what not defense to action charging wilful violation.* The contributory negligence of a plaintiff is not a defense to a wilful violation of the mines and miners act.

2. MINES AND MINERS—*what not defense to action charging wilful violation.* The doctrine of assumed risk is not available as a defense in an action under the mines and miners act charging a wilful violation.

3. MINES AND MINERS—*what defense doubtful in action charging wilful violation.* It may well be doubted whether a defendant in an action brought for the wilful violation of the mines and miners act can be heard to say that the injury was caused by the negligence of a servant of the defendant who was a fellow-servant of the plaintiff.

4. MINES AND MINERS—*what does not excuse failure to adopt rules.* The fact that a servant could not read the English language does not excuse the mine operator from failure to adopt and post rules governing shot firing.

5. APPEALS AND ERRORS—*what errors deemed waived.* Errors not argued are deemed waived and will not be considered on review.

Action in case for personal injuries. Appeal from the Circuit Court of Peoria county; the Hon. N. E. WORTHINGTON, Judge, presiding. Heard in this court at the April term, 1910. Affirmed. Opinion filed October 18, 1910.

W. R. CURRAN, for appellant; MASTIN & SHERLOCK, of counsel.

J. L. MURPHY, for appellee; SUCHER & MCNEMAR, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

Antonio Frenci was digging coal for the Tazewell Coal Company on January 10, 1908, in Room No. 7 off the sixth west entry. Leopold (also called Pauldo) Cargonio was digging coal in Room No. 8, next west of Room No. 7. The coal was loosened by shots fired in each room at the close of the day. Formerly, expert shot firers had been employed and the expense thereof charged to the miners. In the preceding October, at the request of the miners, they had assumed the firing of their own shots. On the afternoon of January 10, 1908, Cargonio fired shots in Room No. 8 on the side next to Room No. 7 and the wall or pillar of coal between the two rooms at that point was so thin that the shots or one of them went through into No. 7, blowing into that room 600 or 800 pounds of coal. The coal hit Frenci,

broke his left leg, and seriously injured him otherwise. As a result, it became necessary to amputate his left leg about four inches below the knee. He was ill for a long time, was incapacitated thereafter from his former employment, and was obliged to do work which was much less remunerative. He brought this action to recover damages for said injuries, and filed an amended declaration containing eleven counts. The second, fifth and ninth counts were afterwards dismissed. The first count averred common law negligence in failing to use reasonable care to provide plaintiff with a reasonably safe place wherein to work. The other counts which went to the jury charged wilful violations of various provisions of chapter 93 of the Revised Statutes, entitled "Mines and Miners." The third count charged wilful violations of the provisions of section 16 (d), in that defendant, through its mine manager, wilfully failed to give special attention to, and instructions concerning, the proper handling of explosives in the mine, and in the time and manner of placing and discharging the blasting shots. The fourth count charged a wilful violation of section 18 (a) and (b) in that defendant wilfully failed to cause the working place of plaintiff to be visited by a duly certified mine examiner, and to cause the rooms and pillar aforesaid to be inspected by such examiner so as to observe if there were any unsafe conditions, and to cause a conspicuous mark to be placed at or near said defective pillar. The sixth count charged a wilful violation of the same provisions as the third count, and other violations of the same section. The seventh count charged a wilful violation of section 18 (c) in various respects. The eighth count charged a wilful violation of section 18 (b) in permitting persons to work in the mine before conditions had been made safe. The tenth count charged a wilful violation of a part of section 16 (a) in a failure of the mine manager to visit and examine the working places in Rooms 7 and 8 for at least six days before the injury. The eleventh count charged a wilful violation of section 32, requiring the posting of rules on the engine house. An additional count was afterwards filed, charging a wilful violation of section 16

(e) in failing to have the mine examined every morning before the men were permitted to go to work. After verdict plaintiff filed two additional counts, which he says are not intended to support the verdict, but are meant to meet certain matters set up in defense, before the Statute of Limitations should run, in case a new trial should be awarded. Defendant pleaded the general issue, and there was a trial and a verdict for plaintiff in the sum of $3,000 and a judgment thereon, from which defendant below appeals.

Nine rooms had been turned south off the sixth west entry, numbered from one to nine. Most of them had an opening directly into the room, but to enter No. 8 one first went through the throat or opening into No. 7, and a short distance into No. 7 an opening was cut through west into No. 8. No. 7 had been cut perhaps fifty feet south before the opening into No. 8 was begun, and it had been cut fifty or sixty feet further south before this accident. Frenci did all the digging of coal in No. 7. Cargonio cut the entry from No. 7 into No. 8 and cut west till he had obtained the desired width and then worked the room to the south, and had cut in some sixty feet. At a certain point in his west wall Frenci had curved in some towards the west. When Cargonio had carried Room 8 to about the same point he also caused his room to belly in towards Room 7. It was required that a cross cut should be cut through between rooms every sixty feet for purposes of ventilation, and the defense claims that, although No. 8 had then gone only about fifty feet, orders had been given to make a cross cut at that place; but Frenci and Cargonio deny that any orders had been given to put in a cross cut there or that the bellying in of each room towards the other had been done by them for the purpose of locating a cross cut there, and also denied that they had done this intentionally. The result, however, was that the intervening wall or pillar was made so thin that shots fired by Cargonio broke through and carried a mass of coal into No. 7. The method pursued in shooting was that near the time to close the mine at the end of the day each miner drilled holes where he wished to tear off the coal, and

loaded them with powder and attached a fuse which, when lighted, would take about six minutes to explode the charge. When all was ready and a driver had notified the miner in the farthest room to fire, he lighted his fuse and went out of his room and went into the next room and notified the miner there of the firing. The first miner would then pass out to the entry and go to the shaft and go home. The second miner notified would then light his fuse, notify the next man and pass on, and so on through the tier of rooms. At firing time each miner had to have two lamps, the one on his cap which lighted him about the mine, and another with which to light the fuse. On the afternoon in question the miner in No. 9 lighted his fuse and notified Cargonio in No. 8. Cargonio lighted his fuse and passed into No. 7 and notified Frenci and then went out. Frenci was at his box of supplies, which he kept just east of the switch track in his room directly opposite where this wall was so thin. Frenci intended lighting his fuse immediately, but had some trouble in lighting his second lamp, and in trying to fix it pulled out the wick and was obliged to get an iron with which he tried to push the wick into place. He did not know that the pillar between him and No. 8 was dangerously thin. The trouble with his lamp detained him till the shot exploded in Room No. 8 and he therefore received the injuries already mentioned. Appellant contends that this was a risk which appellee assumed; that Cargonio was his fellow servant and that the injury was due to the negligence of Cargonio and therefore appellant is not responsible; and that appellee was guilty of contributory negligence in bellying the wall to the west and in not learning from the sound of Cargonio's drill that the wall was dangerously thin, and in not leaving the room before the shot in No. 8 exploded. That the contributory negligence of the plaintiff is not a defense in an action for the wilful violation of the Mines and Miners Act is held in many cases, among which are Catlett v. Young, 143 Ill. 74; Carterville Coal Co. v. Abbott, 181 Ill. 495; Odin Coal Co. v. Denman, 185 Ill. 413; Western Anthracite Coal Co. v. Beaver, 192 Ill. 383; Mertens v.

Southern Coal Co., 235 Ill 450; and Peebles v. O'Gara
Coal Co., 239 Ill. 370. It was also held in Spring Valley
Coal Co. v. Patting, 210 Ill. 342, and Kellyville Coal Co. v.
Strine, 217 Ill. 516, that the doctrine of assumed risk is not
available as a defense in such a case. It may well be doubted
whether a defendant in an action brought for wilful vio-
lation of said statute can be heard to say that the injury was
caused by the negligence of a servant of defendant who was
a fellow servant of plaintiff. Niantic Coal and Mining Co.
v. Leonard, 126 Ill. 216; Girard Coal Co. v. Wiggins, 52
Ill. App. 69. But, if the doctrine of fellow servants is
available as a defense, it is not established in this case. The
evidence would not warrant the jury in finding that Frenci
and Cargonio were fellow servants. Frenci was mining
coal for appellant in Room No. 7 at a certain price per ton.
Cargonio was mining coal in Room No. 8 under a like
arrangement. Neither of them ever worked in the room of
the other. Neither of them assisted the other. Sometimes
one borrowed powder or other supplies from the other. The
one whose duty it was to fire his shot first was required
to notify the next man. They had no other relations with
each other and were not fellow servants. Moreover, we do
not think it could reasonably be found that Cargonio was
negligent. It was the duty of appellant to see that the
shooting was so directed that the pillar of coal between
rooms was left of a sufficient thickness to be safe. Cargonio
was not required by any rule or regulation there prevailing
to keep himself advised of the exact location of the cut on
the other side of the pillar and to make measurements and
ascertain the thickness of the pillar. These all pertain to
the duties of the mine manager and the mine examiner, as
representatives of the appellant. It ought also to be said
here that if contributory negligence was a defense, it is not
shown that Frenci was guilty of negligence. No duty de-
volved upon him to watch or guard against or know the
course of the cut and drill in the adjoining room. The proof
is clear that he did not know of the thinness of the partition
wall of coal. There is no proof that the warning from

Cargonio that he had lighted his fuse in Room 8 was intended to protect Frenci from the danger of the shot. So far as the proof shows the only purpose of the warning or notice that the fuse had been lighted in Room 8 was to enable Frenci to light his fuse and start to leave the mine before that part of the mine was filled with smoke which the shooting caused.

It is a reasonable conclusion from the evidence that the condition of this pillar or supporting wall of coal had been dangerous for some days and at least was dangerous when the men went into the mine that morning and, under sections 16 (d) and 18 (b), it was a wilful violation of the law not to ascertain that fact and mark the place as dangerous. Frenci and Cargonio were permitted to work in Rooms 7 and 8 before conditions had been made safe and this was a wilful violation of section 18 (b). No instructions had been given these employes as to the proper manner of firing shots near the partition wall as required by section 16 (a). No record had been made of the dangerous condition existing as to this place, as required by section 18 (c). We are of opinion also that appellant should have adopted rules to govern shot firing by its employes and should have posted them on the engine house as required by section 32. The fact that Frenci could not read the English language does not excuse appellant or relieve it from liability. If proper rules had been so posted, though Frenci might not have been able to read them, yet very probably they would have been read and understood by many of the miners and the information would in that way have reached the whole body of the miners. We therefore conclude that this record shows wilful violations of the statute, causing the injury to Frenci.

Under the authorities above cited the only criticism made upon the instructions given at the request of appellee is not well founded. Appellant in its brief gives the numbers of twenty-one instructions which it says the court erred in refusing to give at appellant's request. This supposed error is not argued, and no reasons are advanced to show why the court should have given the instructions, and we regard the

alleged error as waived because not argued; but we find that, generally speaking, those instructions were so drawn as to be applicable to the entire declaration, whereas they were only the law as applied to the count for common law negligence. For the same reason the court properly modified certain of appellant's instructions as requested, though the supposed error in so modifying them is also not argued and is therefore waived. While it is asserted by appellant that the damages are excessive, no argument is made to sustain that assertion, and we are of opinion that the judgment was moderate for the injuries suffered.

The judgment is therefore affirmed.

*Affirmed.*