Hugo Peterson, Executor, Appellee, v. The Sahlin Company, Appellant.

Gen. No. 18,987.

1. MASTER AND SERVANT, § 845*—*when master liable for act of night watchman in leaving elevator door open.* Where a night watchman is employed to guard and keep an elevator door closed until the elevator man arrives in the morning, and the watchman in operating the elevator left the door open so that an employee returning to work in the morning fell into the elevator shaft, *held* that the leaving of the elevator door open was the act of the employer, though it was not within the scope of his employment to run the elevator.

2. MASTER AND SERVANT, § 98*—*defenses not available in action for violation of Factory Act.* The doctrine of assumed risk, contributory negligence or fellow-servants cannot be availed of as a defense in an action by an employee to recover for injuries resulting from a violation of the Factory Act, J. & A. ¶¶ 5386 *et seq.*

3. MASTER AND SERVANT, § 784*—*when instruction erroneous as omitting elements of recovery.* In an action by an employee based on an alleged violation of the Factory Act, *held* that an instruction which directed a verdict and set out the provisions of the act alleged to be violated was erroneous for the reason that it did not embody all the elements necessary for the jury to find before returning a verdict, and that it failed to define for the jury the terms "factory, mill or workshop."

4. MASTER AND SERVANT, § 98*—*proof essential to a recovery for a violation of Factory Act.* To entitle an employee to recover under statutory counts for violation of the provisions of the Factory Act, J. & A. ¶¶ 5386 *et seq.*, such employee must prove that he or she was an employee in a factory, mill or workshop within the meaning of the act, and that the defendant operated or controlled it.

5. MASTER AND SERVANT, § 792*—*when instruction as to applicability of statute improper.* In an action for an alleged violation of certain sections of the Factory Act, where an instruction given for plaintiff set out such sections of the act, the language of a portion of the instruction which intimated that whether or not the sections were applicable was a question for the jury, *held* improper and misleading.

6. MASTER AND SERVANT, § 98*—*what constitutes violation of Factory Act.* Under the Factory Act, J. & A. ¶¶ 5386 *et seq.*, an

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

employee is not required to prove a wilful violation in order to recover, as is required under the Miners' Act, J. & A. ¶¶ 7475 *et seq.*

7. MASTER AND SERVANT, § 622*—*when evidence of previous violations of Factory Act inadmissible.* In an action by an employee to recover for personal injuries resulting from a violation of the Factory Act, evidence that the employer had violated the statute on other occasions than the one relied on for recovery, *held* inadmissible.

8. MASTER AND SERVANT, § 98*—*what not a compliance with provision of Factory Act requiring lights in front of elevators.* Section 17 of the Factory Act, J. & A. ¶ 5402, requiring an artificial light when necessary to be placed in front of elevators, etc., *held* not fully complied with by placing such light in the elevator.

Appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Reversed and remanded. Opinion filed October 7, 1914. Rehearing denied October 16, 1914.

JOHN A. BLOOMINGSTON, for appellant.

DANIEL V. GALLERY, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

The Sahlin Company appealed from a judgment of $2,000 against it and in favor of Edna Ellingsen in her suit for personal injuries.

Appellee had been employed by appellant for five years and when injured was working for it upon the fourth floor of its building at 1403 and 1409 on the south side of West Congress street, Chicago. The building fronts north one hundred feet and extends south to the alley, and a three story building adjoins it on the corner lot immediately east. Entrance to the building from Congress street is made through a hall in the northeast corner extending south thirty-four feet. The elevator shaft projects into the hall from the east wall, is sixteen feet south of the double door entrance, and faces west. The hall north of the ele-

vator is thirteen feet and four inches wide and five feet nine inches where it passes west of the elevator. The west wall of the elevator is twenty inches thick, and the doors to it are hung about even with the east side of that brick wall, and those doors have glasses about three feet long and twenty-two inches wide, the door that is moved by the elevator man being about three feet wide. The inside walls of the elevator are said to be whitewashed, but of a ''dark white color,'' according to appellee's evidence, by reason of having been soiled. The ceiling was about fourteen feet in height. There is a large room just west, separated from the hall by a partition, lathed and plastered for the first four feet up from the floor, and the rest of the partition is of opaque wire glass. The natural light that reached the elevator came from the north through the clear glass in the double doors and in the transom above them, the glass in each door being two feet four inches by five feet six and one-half inches, and that in the transom being six feet six inches by eighteen inches. Appellant claims that some light comes through the glass partition from the well-lighted room west of it. There was no artificial light in front of the elevator. There was one in the elevator for use on dark days, but it was out of commission on the day in question. Appellee was injured on a bright sunny day, July 13, 1910, about two minutes before 7:30 A. M., the time to begin work there, by falling into the well hole at the bottom of the elevator shaft and fracturing the fibula or small bone of her right leg, by reason of which she lost several months' time and incurred $215 expenses for hospital fees and services of a physician in being healed. Appellee sometimes used the elevator there and sometimes the stairway to go to her working place. On the day of her injury she came into the building in a hurry having only two minutes to get to her work on time. A crowd of girls had preceded her to the front of the elevator,

and as the regular elevator man was late that morning, at the urgent entreaty of those girls, the watchman had come down from the third floor with the elevator, and had taken a load of them to the fourth floor, and by oversight had left the elevator door on the first floor open just before appellee came. Appellee walked straight south down the hall to the elevator, turned to her left to enter it, and seeing the door was open, and thinking the elevator was in place, stepped into the shaft and fell to the bottom of the well hole.

A common-law declaration was originally filed charging negligence in appellant for its failure to furnish her a reasonably safe place in which to work, and reasonably safe means of reaching her work, charging failure to keep the elevator door closed and properly lighted. Appellee treats this count as a part of her declaration, although she asked no instructions applicable to it and it has little or no importance in this appeal.

Afterwards, what is called an amended declaration was filed containing three statutory counts, all charging that appellant controlled there a factory building or workshop and the said elevator, at which factory or workshop appellee was employed by it in its business conducted there, and on which elevator it had frequently carried her prior to her injury, while so at work. The first count thereof charges a violation of section 92, ch. 48, of Hurd's St. 1911, p. 1129 (J. & A. ¶ 5389), or section 4 of what is commonly known as the Factory Act, by allowing the said elevator door to remain open at a time when it was not necessary that it be open in order that the elevator might be used.

The second count charges a violation of section 17 of the Factory Act (J. & A. ¶ 5402) by neglecting to keep burning a proper light in front of said elevator door when it was dark there and on a work day, and when the influx of natural light there did not make artificial light unnecessary.

The third count of the amended declaration combined the first two statutory charges aforesaid and all three of said counts averred that appellee was injured by reason of appellant's violation of said statute, and while she was in the exercise of due care for her own safety.

It is contended by appellant that the evidence is not sufficient to sustain the averment in the second count of the amended declaration, that it was dark at the elevator and that the influx of natural light there did not make artificial light unnecessary. Much of this argument is based upon appearances at and in the elevator as shown by a certain photograph in the record, and the evidence of nine of appellant's witnesses who testified that the elevator and its surroundings were as well lighted and as plain to the view of any one standing in front of the elevator as they appear in the photograph. It must be admitted that all things in and about the elevator are very plain and easily seen from any point in the hall in front of the elevator if the witnesses were not mistaken about the correctness of the photograph, because the picture shows that every particle of the inside and outside of the elevator is so well lighted that they could easily be seen. It is claimed by appellee that the photograph was made from a negative taken by a flash light, but if this be true it should have been shown by evidence that was certainly obtainable, but which does not appear in the record. As the judgment will have to be reversed for reasons to be herein set forth, we do not desire to go into a full discussion of the merits of the case on the evidence. We think, however, that the question argued is one that should be submitted to the jury for settlement. Appellee testified on that point that there was no light in front of the elevator on the day of her injury, which was a work day there, and that there was no light in the elevator shaft, and that it was dark in front of the elevator and in the elevator shaft. One

of the said nine witnesses for appellant, Freda Amies, on cross-examination, testified: "You had to walk up to the elevator before you found out the elevator wasn't there. You couldn't see it until you got there, not until you got in front of it. You have to go up to the door to see, if it isn't there. You are in the hall when you are standing in front of the door and until you are standing in front of the wall you can't see whether the elevator is open or not. You have got to get right up to it. You can't see it until you get up to it."

The elevator was above the first floor when appellee was injured. The picture in question shows the elevator in place on the first floor, and, therefore, does not present a photograph of the appearance of things there with the elevator removed to its situation when the injury occurred.

Appellant also strenuously insists that the watchman who ran the elevator at the request of the other girls there, and negligently left open the said door of the elevator shaft, had no authority whatever from appellant to run the elevator, and that his acts in that regard did not render appellant liable for any injury by reason of his operating the elevator. That may be conceded, but that argument is completely met by the fact that the operation of the elevator was not the sole cause of appellee's injury. The opening and leaving open the said door was an approximate cause of her injury which could not have happened as it did if the door had been kept properly closed. If the watchman was the representative of appellant to guard and keep said door closed in the absence of the elevator man, appellant would be chargeable with his knowledge in that regard, and bound by his negligence in opening and in failing to close the door after he had opened it, even though those negligent acts were committed preliminary to his unauthorized act of running the elevator. The facts that he was employed there

as night watchman and that he was the custodian of the key to the door in question while such watchman, and that his duties required him to be at the premises until the elevator man came on for work in the morning, tend to prove that it was a part of his duty to keep the said door closed at the very time of appellee's injury. The evidence might have been made more satisfactory upon that point by further examination of the watchman, but being a hostile witness to appellee she was under no obligation to cross-examine further upon that point. We may say in conclusion on this point that the question of whether or not appellant is to be held to notice of the fact that the elevator door was open at the time in question depends solely on whether or not it was chargeable with the negligence of the watchman in leaving the door open, for if it was a part of his duty to keep the door closed appellant was chargeable with his knowledge and his acts, and the question of how long the door had remained open has no bearing on the question of notice in this case. If the act of the watchman in that regard was the mere act of a servant done outside of the scope of his employment, appellant was not bound thereby, any more than it would have been if the door had been opened and left open by a stranger or intruder.

Appellant offered certain instructions that were refused by the trial court in which the defenses of assumed risk, contributory negligence and of fellow-servants were presented for the consideration of the jury and refused by the court. Certain other instructions were given by the court for appellant in which the jury were told that contributory negligence of appellee would be a bar to her recovery. We do not care to discuss those refused instructions further than to say they were properly rejected as to the common-law count, because they were not expressly limited to that count, and that as to the statutory counts none of those defenses were

applicable. Our Supreme Court in the case of *Streeter v. Western Wheeled Scraper Co.*, 254 Ill. 244, as we understand that decision, held, in substance, that the doctrine of assumed risk, contributory negligence and of fellow-servants furnish no defense to a violation of the Factory Act by the operation of a factory or workshop within the meaning of that act. The reasoning and the declarations of that court, on pages 256 to 260 inclusive in that case, make it clear that those defenses cannot be made to a suit for personal injuries by an employee in a factory or workshop against the operator thereof, where the charge is that the injury was caused by a violation of that act by the operator. The Court expressly decides in that case that the doctrine of assumed risk furnishes no defense to such a suit by an employee. On page 258 of that opinion the Court, speaking through Justice Dunn, said: "For many years we have held, in the construction of the mining act, that neither assumed risk nor contributory negligence is available as a defense to a suit for damages caused by a wilful violation of the provisions of that act," citing a number of cases. It is then further said by the Court that the reasoning on which those cases under the mining act are based is applicable to a case under the Factory Act, and that in view of the construction given to the mining act in regard to the assumption of risk, the General Assembly must have supposed that the same construction given to the mining act providing for the health and safety of miners would be given to the Factory Act in that regard, as that statute was expressly passed to provide for the health and safety of employees in factories.

All the decisions of our Supreme Court on the Mines and Miners' Act, beginning with the case of *Bartlett Coal & Mining Co. v. Roach,* 68 Ill. 174, have held, wherever the questions have been raised, that the doctrine of assumed risk and of contributory negligence furnish no defense to a wilful violation of that

act by the operation of a mine, no matter how negligent the injured employee may have been. It has been frequently declared in those decisions that the statute was not only designed to protect employees in coal mines from the inherent dangers of the business, but also to protect them from the result of their own negligent or inconsiderate action. *Brunnworth v. Kerens-Donnewald Coal Co.*, 260 Ill. 202; *Catlett v. Young*, 143 Ill. 74. And an averment in the declaration that the plaintiff was in the exercise of due care under that act is surplusage and need not be proved. *Carterville Coal Co. v. Abbott*, 181 Ill. 495.

It is also well settled by the decisions under the mining act that the operators of coal mines are responsible for all injuries sustained by employees in their coal mines by reason of a wilful violation of the statute by any of their agents or employees while working within the scope of their employment, and that the doctrine of fellow-servants furnishes no defense to such an injury. The important question is as to the authority or duty of the offending employee, and not as to whether or not he was a fellow-servant of the injured employee. The concurrent negligence of the injured servant or of any third person is no defense to such an action. *Girard Coal Co. v. Wiggins*, 52 Ill. App. 69; *Joseph Taylor Coal Co. v. Dawes*, 122 Ill. App. 389, affirmed in 220 Ill. 145; *Moore v. Centralia Coal Co.*, 140 Ill. App. 291; *Niantic Coal & Mining Co. v. Leonard*, 126 Ill. 216; *Spring Val. Coal Co. v. Rowatt*, 196 Ill. 156; *Brunnworth v. Kerens-Donnewald Coal Co.*, supra.

Appellant complains of the following instruction of the court given for appellee:

"The court instructs the jury that section 4 of an act to provide for the health, safety and comfort of employes in factories, mercantile establishments, mills and workshops in this State, and to provide for the enforcement thereof, so far as said section may be applicable to this case, is as follows:

"But the court does not mean to intimate that any part of the statute is applicable to any particular state of facts, as the facts are to be determined by the jury from the evidence guided by the instructions of the court as to the law:

" 'All hoistways, hatchways, elevator wells, and wheelholes, in factories, mercantile establishments, mills or workshops, shall be securely fenced, enclosed, or otherwise safely protected and due diligence shall be used to keep such means of protection closed, except when it is necessary to have the same open in order that said hatchways, elevators, or hoisting apparatus may be used.'

"The court further instructs the jury that section 17 of said act is as follows:

" 'In all factories, mercantile establishments, mills or workshops, a proper light shall be kept burning by the owner, or lessee, in all main passageways, main hallways, and all main stairs, main stair landings and shafts, and in front of all passenger or freight elevators, upon the entrance floors and upon the other floors on every work day of the year, from the time that the building is open for use until the time when it is closed, except at times when the influx of natural light shall make artificial light unnecessary, provided that when two or more tenants occupy different floors in one building, such elevator shaft need be lighted only on the floors used and occupied by employes.'

"The court further instructs the jury that if you find from the evidence in this case, under the instructions, that there was no light in front of the elevator in question, and that the influx of natural light did not make artificial light unnecessary, and you further find that the defendant did not use due diligence to keep the elevator door closed, and you further find from the evidence that plaintiff was using due care and diligence for her own safety, at and before the time she was injured, and that she fell into such elevator shaft by reason of the failure of defendant to obey the law as above recited, if defendant did fail to obey said law, then you will find the defendant guilty."

The foregoing instruction directs a verdict and should embody all the elements necessary for the jury to find before returning a verdict for appellee. It was necessary for appellee to prove and for the jury to find from the evidence that the building or place in question was a factory or workshop within the meaning of said statute, as alleged in her declaration, and that she was employed at such workshop or factory by appellant, and under said section 17 that she was injured on a work day there at a time when the building was open for use. By section 29 of the Factory Act (J. & A. ¶ 5414), the terms "factory" and "mill or workshop" are specifically defined, and it is very clear that there is no sufficient proof in the record that the place was a factory, mill or workshop within the meaning of the statute, and there was no attempt to prove it. In speaking of the place some of the witnesses merely refer to it as, "the plant," "the building," "the factory building," and once or twice appellant is apparently referred to as "the corset company." Not one question was asked by either party as to the character of the work that was done there or who carried it on and for what purpose, or as to the character of the machinery, if any, used there and how driven, or as to the articles made there, if any, or as to the number and character of the people who worked there and what they did and for whom they were employed, etc. The terms "factory, mill or workshop" were not defined for the jury. In order to recover under the statutory counts appellee was required to show that at the time of her injury she belonged to the class of persons for whose protection and benefit the statute was enacted, that is, that she was an employee in a factory, mill or workshop within the meaning of the statute, as alleged in the declaration, and that appellant operated or controlled it. It was not sufficient to prove merely that she was at work at appellant's building where an elevator was in use for employees. *Brunnworth v. Kerens-Donnewald Coal Co., supra.*

With the proper evidence suggested above in the record the sections of the statute quoted would be entirely applicable, and whether or not applicable should not be left to the jury as was apparently intimated by the Court in the first part of the instruction. Those remarks of the Court were improper and likely to mislead a jury.

The instruction on the measure of damages given for appellee is not subject to the objections urged by appellant. An instruction in almost the identical same words throughout was approved by the Supreme Court in *Cicero & P. St. Ry. Co. v. Brown,* 193 Ill. 274.

The objections to appellant's refused instructions have already been indicated in this opinion and need not be here referred to as they were clearly erroneous and misleading. The facts, in other words, that the watchman was not authorized to run the elevator, or that the elevator door was left open for a very short time, could not have any tendency to excuse appellant. The leaving of the door open by the watchman was a proximate cause of appellee's injury, and if it was the watchman's duty to guard and keep the door closed, it was the act of appellant, if it so employed him.

Under the Factory Act appellee was not required to prove a wilful violation of that act in order to recover, as is required under the Mines and Miners' Act. A negligent violation of the Factory Act was all that was charged and all that she was required to prove, and in this respect the two statutes aforesaid differ. Where wilfulness, or guilty knowledge or malice is charged and proof thereof required, collateral facts or proof of other similar offenses than those charged in the pleadings may be proved to show the knowledge or intent of the defendant. *Joseph Taylor Coal Co. v. Dawes,* 220 Ill. 145.

The same rule, however, does not apply where the charge is negligence simply. It was, therefore, error in the court to admit the evidence of appellee that ap-

pellant had violated the statute in question on other occasions than the one relied on for recovery, that is, that on other occasions it was dark and an artificial light was required and not furnished. *Chicago, B. & Q. R. Co. v. Lee*, 60 Ill. 501.

The remark of counsel for appellee to the court complained of by appellant was improper and the court so held, but as the case will be remanded for further trial, it will not be necessary to further consider this objection, or the objection that the verdict is excessive.

We would not be disposed to reverse the judgment upon those grounds, if the record was otherwise free from error, and not lacking in evidence as already indicated.

The artificial light in the elevator was not a full compliance with the statute, even had it been burning, as the statute also requires a light when necessary to be placed in front of the elevator. A light in the elevator when hoisted to an upper floor would give little or no light at the foot of the elevator.

The death of appellee has been suggested on the record since this cause was taken, but the record does not disclose whether she died from the effects of the injury or from other causes.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*