# Mary Brunnworth, Appellee, v. Kerens=Donnewald Coal Company, Appellant.

1. MINES AND MINERS—*when wilful violation established.* Where it appears that the mine owner failed to maintain a bottom man or lights for the use of a miner and that his injury proximately resulted therefrom a wilful violation is established which justifies a recovery.

2. MINES AND MINERS—*how question of proximate cause determined.* Whether violation of the act constitute the proximate cause or causes of an injury is a question of fact to be determined by the jury.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Madison county; the HON. LOUIS BERN-REUTER, Judge, presiding. Heard in this court at the March term, 1911. Affirmed. Opinion filed November 11, 1911. Rehearing denied April 3, 1912.

WISE, KEEFE & WHEELER, for appellant; MASTIN & SHERLOCK, of counsel.

GEERS & GEERS, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit by appellee to recover damages for the death of her husband, Charles Brunnworth, which occurred while he was in the employ of appellant.

The proofs as developed on the trial, were in the main as follows: On January 8, 1910, appellant was engaged in operating a coal mine in Madison county, Illinois, in the course of which it employed both a day shift and a night shift of men, the former quitting work at 3:30 P. M. and the latter commencing work an hour later. All the coal was hoisted during the time the day shift was on. A little before four o'clock on the afternoon of said day, Brunnworth with four others, Schmidt, Schneider, Swain and Anderson, all of whom, except Anderson, were on the night shift,

descended to the bottom of the shaft. When they reached the bottom the only persons found there were Brown, the driver boss, and Finke, the mule feeder. The bottom man for the day shift had gone up and the electric light used at the bottom of the shaft was turned off. It was some seven or eight feet from where the cage stood at the bottom to the bunting or casing of the shaft. On two sides of the cage were dogs or catches to hold the coal car when on the cage. These were some 18 or 20 inches high and worked automatically, so that when the cage stood on the bottom, they fell back and as the cage was raised they came up between and over the wheels of the car. The two cages were operated by the engineer at the top who was signalled by a bell rung by means of a lever at the bottom of the shaft by the bottom man, when on duty. In coming down Brunnworth discovered that he had left his cap and lamp at the top and it was suggested that he return with Anderson, who was an electrician and was bringing down a chain for some purpose. After they reached the bottom, Anderson disposed of the chain and returning to the south cage, rang the bell as a signal to the engineer. Brunnworth went some 16 feet from the cage, laid down his wrap and bucket and started back to the cage from the east side. At that time Anderson, who was on the cage, had an ordinary pit lamp on his cap, Finke, standing some ten feet west of the cage, had a similar lamp on his cap, and there was a coal oil lantern sitting on the ground two or three feet from him. Brown, east and north of the cage a short distance away, also had a pit lamp. Schneider, about ten feet east of the cage, had a carbide lamp on his cap with a reflector which threw light in the direction the wearer was facing and at this time Schneider was facing north assisting Schmidt to light his lamp. Swain had no light. After the engineer had answered

Anderson's bell and the latter had rung the bell to start, Brunnworth hurried past Schneider and Schmidt to get on. Both of them cried out to him "Wait, Charlie, wait" or words to that effect and afterwards Anderson said to him "Keep off, the cage is belled away." As he came to the cage Brunnworth apparently hesitated and about the same instant the cage started to rise, whereupon he jumped forward, got one foot on the cage and leaning over grabbed the two car tracks on the same. In this position he was carried up until the cage entered the bunting which struck him, and at the same time Anderson caught him by the arm and he was rolled under the cage. Anderson retained his hold and Brunnworth was thus carried to the top of the mine and when taken from under the cage, was found to be dead. Brunnworth was hard of hearing and it was not known whether or not he heard the warnings given him.

The declaration in this suit consisted of four counts two of which charged appellant with a wilful failure to comply with sub-section a of section 28 of the Mining Act in this, that defendant wilfully failed to station at the bottom of said shaft on said day at 3:55 o'clock P. M., less than half an hour after hoisting of coal had ceased for the day, a man charged with the duty of attending the signals, preserving order and enforcing the rules governing the carriage of men on cages, and that by reason thereof the said Brunnworth was permitted to step upon said cage after the same had been rung away from the bottom of the shaft and was in motion.

The other two counts of the declaration charged a wilful failure on the part of appellant to comply with the provisions of subsection b of section 28 of said act, requiring the maintenance of a good and sufficient light at the bottom of said shaft, so that persons coming to the bottom of same could clearly discern

the cage and objects in the vicinity and alleged that by reason thereof Brunnworth, upon arriving at the bottom of the shaft, was unable to discern the cage and objects in the vicinity and stepped upon the same while it was in motion.

There have been two trials of this case, in both of which the jury found in favor of appellee. Appellant insists that the company owed no duty at the time in question to maintain a bottom man or lights for the use of Brunnworth and that the evidence did not show the facts alleged and proven, to have been the proximate cause of the injury; that the court erred in regard to the instructions and in the admission and exclusion of evidence.

Subsections a and b of section 28 above referred to, are as follows:

(a) "At every shaft operated by steam power, the operator must station at the top and at the bottom of such shaft a competent man charged with the duty of attending to signals, preserving order and enforcing the rules governing the carriage of men on cages. Said top man and bottom man shall be at their respective posts of duty at least a half hour before the hoisting of coal begins in the morning, and remain for half an hour after hoisting ceases for the day.

(b) "Whenever the hoisting or lowering of men occurs before daylight or after dark, or when the landing at which men take or leave the cage is at all obscured by steam or otherwise, there must always be maintained at such landing a light sufficient to show the landing and surrounding objects distinctly. Likewise, as long as there are men underground in any mine the operator shall maintain a good and sufficient light at the bottom of the shaft thereof so that persons coming to the bottom may clearly discern the cage and objects in the vicinity."

There is no question but that appellant actually failed to comply with the provisions of the law contained in both of the above sub-sections.

It is, however, contended by appellant, that the duty to maintain a bottom man at the time in question was one which it owed to the day shift alone; that Brunnworth belonged to the night shift which started at 4:30 P. M. and that the duty to provide a man at the bottom for that shift, did not commence until 4:00 P. M. In accordance with this theory of the law, appellant offered the following instruction, which was refused by the court:

"You are further instructed that the portion of the statute which provides a bottom man shall remain at his post of duty for half an hour after hoisting ceases for the day is for the purpose of letting the men out of the mine who are lowered at the commencement of work and has no application to the men who might come down on a later shift of work.

"So if you find from the evidence in this case that the mine commenced work at seven o'clock in the morning on the day in question and that the bottom man was there during the day and that Brunnworth came down the mine on a new shift between 3:30 and 4:00 o'clock in the afternoon, then such bottom man owed no duty to Brunnworth and the company would not be liable in this case for failure to have the day bottom man remain at his post in order to attend to the signals for Brunnworth."

We are of the opinion that this instruction was properly refused and that it was the duty of the operator to retain the bottom man at his post for a full half an hour at least after the hoisting ceased.

It is next contended by appellant that neither the absence of the bottom man nor the failure to maintain lights, was the proximate cause of the injury to Brunnworth. Whether one or both of these violations of the statute constituted the proximate cause or causes of the injury, was a question of fact for the jury. Armour v. Golkowska, 202 Ill. 144; Kellyville Coal Co. v. Strine, 217 Ill. 516. We have reached the conclusion, from a consideration of the proofs, that a jury might

well find therefrom, that the injury to Brunnworth resulted directly from the failure of the company to keep the bottom man at his post for the length of time required by the statute or from its failure to maintain the statutory lights.

The first instruction given for appellee stated that in determining damages the jury should assess them at such sum as they believed from the evidence, guided by the instructions of the court, would be just and fair compensation to appellee based upon the pecuniary loss she had sustained, if any, resulting from the death of her husband. The second told the jury that they might take any fact and circumstance shown by the evidence, into consideration as bearing upon appellee's pecuniary loss in determining her damages. These instructions as a whole appear to us to conform to the usual rules of law applicable to such cases and the objection of appellant that they were inapplicable because the declaration charged that appellee was deprived of her means of support, does not seem to us to be well founded.

Appellant complains that evidence was admitted on the part of appellee, tending to show that the cage, after being put in motion by the engineer, could be stopped at a signal from the bottom man, within a few feet and before reaching the bunting of the shaft. We do not think this evidence improper as it tended to show that had a bottom man been maintained as required by law, he might have stopped the cage after it was started in time to prevent the injury to Brunnworth. Appellant also complains that its cross examination of the witness Schmidt, who was a "buddy" of Brunnworth, was unduly restricted for the reason that the court refused to permit appellant to ask questions of Schmidt on cross examination, concerning Brunnworth's hearing. These questions if asked and answered could only have a bearing on the question of whether

or not Brunnworth was at the time and just before he was injured, guilty of contributory negligence, which was not material in this case.

The judgment of the court below will be affirmed.

*Affirmed.*