## Maria Romani, Appellee, v. Shoal Creek Coal Company, Appellant.

## Gen. No. 19,888.

1. PLEADING, § 459*—*effect of pleading over and going to trial after demurrer sustained to plea.* In an action by a widow for the death of her husband under the Mines and Miners' Act, a plea of the statute of limitations is waived where, after demurrer sustained, defendant, instead of standing by its plea, files the general issue and goes to trial on the second plea.

2. PLEADING, § 45*—*sufficiency of defective statement of good cause of action to save amended counts from statute of limitations.* Where a widow sought recovery for the death of her husband under the Mines and Miners' Act of 1899, as amended in 1907, secs. 18, 33, a defective statement of a good cause of action in the original counts *held* to have saved amended counts stating the same cause of action from a plea of the statute of limitations, on the ground that the amended counts were not filed within the statutory period of a year after the death.

3. PARTIES, § 35*—*when marriage of woman does not constitute misnomer.* Where a woman's name as plaintiff was properly given upon the institution of an action for the wrongful death of her husband, her subsequent marriage does not constitute a misnomer, as a designation of the person plaintiff.

4. MINES AND MINERALS, § 173*—*sufficiency of evidence to show statutory duty.* In an action by a widow for the death of her husband from an explosion in defendant's mine, evidence *held* sufficient to warrant the jury's finding that defendant owed statutory duties under the Mines and Miners' Act of 1899, as amended in 1907, secs. 18, 33.

5. MINES AND MINERALS, § 182*—*when violation of statutory duty for jury.* In an action under the Mines and Miners' Act of 1899 and 1907, secs. 18, 33, *held* the questions whether defendant owed a statutory duty to the deceased and whether there were violations of such a statutory duty were proper issues for the jury.

6. MINES AND MINERALS, § 173*—*where evidence supports finding of violation of statutory duty.* In an action by a widow for the death of her husband in an explosion in defendant's mine, evidence *held* sufficient to warrant the jury in finding that statutory duties were violated.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Appeal from the Superior Court of Cook county; the Hon. HENRY
V. FREEMAN, Judge, presiding. Heard in this court at the October
term, 1913. Affirmed. Opinion filed March 8, 1915.

MASTIN & SHERLOCK and W. B. McBRIDE, for appellant.

CHARLES CHENEY HYDE and CHARLES B. ELDER, for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion
of the court.

Raphael Romani, the husband of the appellee in this
case, the plaintiff below, met his death through an ex-
plosion in the mine of the appellant, the defendant
below, on November 11, 1910. The plaintiff, as "his
widow, dependent on him for support and damaged by
his death," brought suit against the defendant Com-
pany and on March 22, 1913, on the verdict of a jury re-
covered judgment for fifty-five hundred dollars. The
appellant asks this court to reverse this judgment on
grounds hereinafter set forth.

When this accident occurred section eighteen (as
amended by Act approved May 27, 1907) and a portion
of section thirty-three (as amended by Act approved
May 17, 1907) of the Act of April 18, 1899, concerning
Mines and Miners, were respectively in force and this
cause was governed by them. They read as follows:

"Sec. 18. (a) A mine examiner shall be required at
all mines. His duties shall be to visit the mine before
the men are permitted to enter it and first he shall see
that the air current is traveling in its proper course
and in proper quantity. In order to correctly deter-
mine the quantity of air in circulation in different por-
tions of the mine it is hereby made his duty to measure
with an instrument for that purpose the amount of air
passing in the last cross cut or break through each pair
of entries or in the last room of each division in a long
wall mine and at all other points where he deems it

necessary, the same to be noted in the daily book kept for that purpose. He shall then inspect all places where men are expected to pass or to work and observe whether there are any recent falls or obstructions in rooms or roadways or accumulations of gas or other unsafe conditions. He shall specially examine the edges and accessible parts of recent falls and old gobs and air courses. As evidence of his examination of all working places he shall inscribe on the walls of each with chalk the month and the day of the month of his visit.

(b)   When working places are discovered in which accumulations of gas or recent falls or any dangerous conditions exist, he shall place a conspicuous mark thereat as notice to all men to keep out, and at once report his finding to the mine manager. No one shall be allowed to remain in any part of the mine through which gas is being carried into the ventilating current, nor to enter the mine to work therein except under the direction of the mine manager until all conditions shall have been made safe.

(c)   The mine examiner shall make a daily record of the conditions of the mine, as he has found it, in a book kept for that purpose, which shall be preserved in the office for the information of the company, the inspector and all other persons interested, and this record shall be made each morning before the miners are permitted to descend into the mine.''

''Sec. 33.   *   *   *   For any injury to person or property occasioned by any wilful violation of this act or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured for any direct damages sustained thereby, and in case of loss of life by reason of such wilful violation or wilful failure as aforesaid, a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children or to any other person or persons who were before such loss of life dependent for support on the person or persons so killed for a like recovery of damages for the injuries sustained by reason of such loss of life or lives not to exceed the sum of ten thousand dollars: *Provided,* that every such action

for damages in case of death shall be commenced within one year after the death of such person.''

The case went to the jury on certain amended counts of the declaration (the 1st, 2nd, 4th, 5th, 6th, 8th and 9th of those filed December 5, 1912) and the general issue pleaded thereto.

One complaint of the defendant is that a demurrer to the plea of the statute of limitations to these counts was improperly sustained, that the original counts in the declaration stated no cause of action, that the amended counts were the first counts that did state a cause of action and that they were filed more than a year after the death. We do not think the defendant is in a position to raise this point. The statute of limitations was filed to these counts as a single plea, not in connection with the general issue. When a demurrer to this plea was sustained, an order on defendant to plead further to the declaration was entered, with which the defendant complied. Instead of standing by its plea of the statute of limitations it filed the general issue and on that plea went to trial. The error, if it had been an error, of sustaining the demurrer to the plea of the statute of limitations was thereby waived. *Spencer v. Aetna Indemnity Co.*, 231 Ill. 82. But we do not think there was any error in that ruling. The original counts were, in our opinion, at the worst, defective statements of a good cause of action.

Another point made by the appellant is that there was a misnomer of the plaintiff. The plaintiff's name was correctly given when the suit was brought. The evidence showed that she had afterwards intermarried with one Almerigi, but her identity remained unchanged, and was made sufficiently certain by the continued use of the name of Maria Romani.

The first of the counts on which the case went to the jury avers the duty of the defendant under the statute not to allow any of the men engaged in work in the

underground workings of said mine to remain in any part of said mine through which gas was being carried into the ventilating current nor to allow any of said men to enter said mine to work therein except under the direction of the mine manager until all conditions should have been made safe, and the wilful violation of this duty in the case of Raphael Romani by the defendant's allowing him to enter a portion of the mine in which it had allowed a dangerous condition to exist by the generation and accumulation of gas in the ventilating current, and by its allowing said Romani to remain down in said portion of the mine not under the direction of the mine manager—by reason of all which the death of Romani occurred.

The next count avers the duty of the defendant under the statute to have a mine examiner visit the mine each day before the men were permitted to enter it and to inspect all places where men were expected to pass or to work and to observe whether there were any recent falls or obstructions in rooms or roadways or accumulations of gas or recent falls or obstructions in rooms or roadways or accumulations of gas or other unsafe conditions, and to inscribe on the walls of each with chalk the month and the day of his visit, and when working places were discovered in which accumulations of gas or recent falls or any dangerous conditions existed, to place a conspicuous mark thereat as notice to all men to keep out, and at once to report his finding to the mine manager, and the wilful violation of these duties and the consequent death of Romani when "in the performance of his duty as an employee of said defendant and by its direction," he "entered into a portion of said mine in which men were expected to pass and to work."

· The next count alleges the same duty of the defendant set up in the preceding count and its violation by failing to have its mine examiner visit said mine on the day of the accident before the men were permitted

to enter it, and the consequent death of Romani, who "was permitted by said defendant to descend into its said mine for the purpose of removing his tools therefrom with the knowledge and consent of said defendant," and avers Romani, "although not then in said defendant's employ, entered into a portion of said mine where men were expected to pass or work and where there were accumulations of gas and other unsafe conditions which could and would have been observed had said inspector visited said mine" before Romani was permitted to descend into it, etc.

The next count alleges the same statutory duties and their violation by the defendant by wilfully failing "to place a conspicuous mark in a certain working place in said mine" where accumulations of gas and other unsafe conditions had been discovered; by reason whereof Romani, "who, as a miner then and there in the employ of said defendant had entered into said mine of said defendant with the full knowledge and consent of said defendant and for the purpose of removing his tools therefrom," was killed by an explosion of gas.

A further count alleged substantially the same matter as that just recited, but describes Romani as "permitted by said defendant to descend into its said mine" with its knowledge and consent, "although not then in said defendant's employ, for the purpose of removing his tools therefrom."

Still another count alleged that Romani had been employed by the defendant up to within a short time before the day of his death, when, by reason of dangerous conditions existing in the passageway or gallery leading to his working place, he was instructed by said defendant to stop work in the portion of said mine where he was then working. After averring, like the other counts, the statutory duties of the defendant to have a mine examiner visit the mine each day before the men were permitted to enter it and in case of discovering dangerous conditions in any place to place a

mark thereat, and the violation of said duties, the count asserts that Romani, who had been a miner in the employ of the defendant to within two weeks before, and "who in anticipation of performing other work in said mine in the employ of defendant had left his tools in a certain portion of said mine of said defendant with the full knowledge and consent of said defendant, was permitted by said defendant to descend into its said mine, and with the knowledge and consent of the defendant entered by way of a passageway and gallery other than that which was in a dangerous condition into said portion of said mine where he had left his tools," which had been his working place, for the purpose of removing his tools, and that there was an accumulation of gas there, but no conspicuous mark, and that thereupon there was an explosion which caused Romani's death.

The last count specifically avers the violation of its statutory duties by the defendant to have been "wilfully failing on the day aforesaid to have its mine examiner inspect a certain portion of said mine where men were expected to pass or to work" and "wilfully failing to observe that there were accumulations of gas or other unsafe conditions in said portion of said mine," and alleges that the fatal explosion occurred when Romani, with the knowledge and consent of the defendant, had been permitted by said defendant to descend into a portion of the mine to remove his tools which he had left there, "which portion of said mine was a place where men were expected to pass and to work, but which had not been inspected by the said defendant on the day aforesaid, and wherein the defendant had failed to observe accumulations of gas or other unsafe conditions then and there existing."

The attack on the judgment most insisted on is based on the position that the case should have been taken from the jury by a peremptory instruction for the defendant. This position is in turn based on the as-

sumption that it was disclosed by the evidence that
Romani was killed at a place where he had no right to
be.    The defendant's counsel say in their argument:
"    *    *    *    the deceased was killed in a part of
plaintiff in error's mine which had been closed to him,
which was not his working place at that time.

This question goes to the very essence of the case
and is decisive of every question involved in the case.
There is no principle of law or consideration of justice
or public policy which would require an employer to·
compensate for the death of an employee which was
caused by his entering a place where his duties did not
call him.''

The contention of the defendant is that the evidence
showed Romani to be ''a legal trespasser or intruder''
on the defendant's property at the time of the explo-
sion, to whom the defendant ''owed no duty except not
to wilfully or wantonly injure him.''

It is undoubtedly true that if Romani was a tres-
passer, going without right where he had no warrant
for going when the explosion occurred, this judgment
is wrong.    But we cannot assume this, and we think
there was evidence from which the jury were at liberty
to find the contrary.    There was a conflict of testimony
at the trial on several points of importance, but there
was certainly evidence that, as the·plaintiff's counsel
puts it:

''He (Romani) was employed by the defendant as
a miner and had been given a working place.    He was
paid in accordance with the amount of coal he mined.
He had a regular pay day on the 15th and 30th of each
month.    His pay day had not arrived on the 11th and
he was still carried on the books of the Company.    To
get his pay he had to go to the mine manager at the
bottom of the mine.    He had left his tools in the mine
at his working place in accordance with the custom.
He would not be paid off until he went to the office at
the top of the mine.    He had a right to go to get his
tools.''

And although there was contradiction of the further statement that follows in counsel's argument—

"The mine manager authorized him to go there and there was no danger sign to prevent his going there"— there was ample evidence to go to the jury to sustain that assertion, and the jury were from it at liberty to find and evidently did find that this was the fact. Under the conditions that the jury were warranted in finding existed, it seems to us that there can be no doubt that towards Romani the defendant at and immediately before the time of the accident owed statutory duties. *Brunnworth v. Kerens-Donnewald Coal Co.*, 260 Ill. 202, p. 218; *Riley v. W. Holland & Sons, Ltd.*, Law Reports, 1 King's Bench Div. (Court of Appeal) p. 1029 (1911); *Molloy v. South Wales Anthracite Colliery Co.*, 4 Butterworth's Workmen's Compensation Cases, p. 65 (1910).

It further seems to us that there was evidence warranting the jury in finding that those duties were violated. The rulings on the instructions were, to speak generally, in accordance with this theory. The court left to the jury the questions whether the conditions we have described existed, and whether the violations of duty alleged occurred. We do not think a more detailed discussion of them or of the evidence would serve any good purpose. We find no substantial error in the record, and the judgment of the Superior Court is affirmed.

*Affirmed.*